594 F.2d 202
 19 Fair Empl.Prac.Cas. 439, 19 Empl. Prac.
Dec. P 9136
Joan ABRAMSON, Plaintiff-Appellant,
v.
UNIVERSITY OF HAWAII, a Body Corporate, Board of Regents,
University of Hawaii, Harriet Miziguchi, Wallace S.
Fujiyama, Sandra A. Ebesu, Roger C. Evans, John A. Hoag,
Ruth Oshiro, Herbert M. Richards, Jr., Kiyoshi Sasaki,
Thomas S. Shibano, in their respective capacities as members
of the Board of Regents, University of Hawaii, Fujio
Matsuda, President, University of Hawaii, in his capacity as
President of the University of Hawaii, Defendants-Appellees.
 Nos. 77-2411, 78-1271.
 United States Court of Appeals,
Ninth Circuit.
 March 28, 1979.
 
 James T. Paul (argued), Paul, Johnson & Alston, Honolulu, Hawaii, for plaintiff-appellant.
 Edward R. Lebb (argued), Honolulu, Hawaii, Paul Mirengoff (argued), Washington, D. C., for defendants-appellees.
 On Appeal From the United States District Court for the District of Hawaii.
 Before SNEED and KENNEDY, Circuit Judges, and DAVID WILLIAMS,* District Judge.
 SNEED, Circuit Judge:
 
 
 1
 This is a consolidated appeal from two separate determinations in appellant's suit alleging that appellees discriminated against her on the basis of her sex. Appellant first appeals from a partial summary judgment as to her claims under Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e Et seq. Her Title VII claims center around the University's failure to grant her tenure. Appellant also appeals from a final judgment entered on her equal pay claim under the Equal Pay Act of 1963, 29 U.S.C. § 206(d). She had sought to stay adjudication of this claim pending the decision on appeal of her Title VII claims. The court denied her motion for continuance of the trial date, and the claim was dismissed. We affirm the final judgment on the equal pay claim, reverse the summary judgment as to the Title VII claims and remand for further consideration in light of our disposition.I. SETTING OF THE LITIGATION.
 
 
 2
 A. Factual Background.
 
 
 3
 Appellant Joan Abramson was first employed by the University of Hawaii in 1967 for a one-year term as an instructor in the English Department. She was subsequently employed for three consecutive one-year terms ending with the 1970-71 academic year. In late 1970, the English Department's Promotion and Tenure Committee recommended against granting appellant tenure. Thereafter the chairman of the English Department, the Personnel Committee of the College of Arts and Sciences, and the Dean of the College of Arts and Sciences reviewed the recommendation and concurred with it. In early 1971, the University Faculty Personnel Committee reviewed the prior recommendations and recommended instead that tenure be granted. Nevertheless, the decision apparently was made by the President of the University to follow the Department's recommendation, and, on June 10, 1971, the Dean of the College informed her, in accordance with the University requirements,[1] that she would not receive tenure.
 
 
 4
 Under a provision in her contract, appellant then was offered a "terminal year" of employment, which she accepted for the 1971-72 academic year. During this final year appellant attempted to have the University reconsider the decision conveyed to her in June 1971, as she alleges that it has done in other cases. She pursued her cause first to the Faculty Senate Committee on Privilege and Tenure, which voted unanimously to suggest that tenure be granted. She then attempted to convince the English Department to reconsider its decision, but was unsuccessful. In early 1972, appellant Abramson protested to the President of the University that she had been denied tenure on the basis of her sex. The President referred the matter to his Commission on the Status of Women. The Commission reported on April 19, 1972 that "tenure appears to have been denied on the basis of discernable sex discrimination."
 
 
 5
 Despite this finding, the President declined to reconsider the University's decision and in June 1972 her then existing contract expired. Later that month appellant lodged a charge with the Equal Employment Opportunity Commission (EEOC) alleging that she had been denied tenure because of her sex.
 
 
 6
 Appellant subsequently was employed as an instructor in an experimental program of the University, New College, for the 1972-73 academic year. Thereafter several differences arose between appellant and the University. Appellant filed an equal pay complaint with the United States Department of Labor and modified her EEOC complaint to allege that actions taken by the University were in retaliation for her filing of charges. In August, 1973 the University Board of Regents abolished New College, and, on September 6, 1973, the University informed appellant that she would no longer be considered a member of the faculty.
 
 
 7
 B. Previous Litigation.
 
 
 8
 Appellant has been involved in two suits previous to this one complaining of University actions. On September 29, 1972, appellant filed suit individually in the Circuit Court of the First Circuit, State of Hawaii, against the Board of Regents of the University, its individual members, and the President of the University. The suit challenged the 1971 and 1972 actions resulting in her denial of tenure. Counts I and II alleged that the procedures used in denying her tenure violated her contract rights and her rights under the Hawaii Administrative Procedures Act. Count III alleged that the denial of tenure violated the state Constitution's prohibition against sex discrimination. On October 17, 1973, the trial court granted appellant's Motion for Leave to Dismiss Count III without prejudice to her right to file an action in federal court alleging a federal cause of action for sex discrimination. Appellant argued to the state court that her claim of sex discrimination was best left unresolved until after the EEOC completed processing her charge, since the EEOC might be able to conciliate the claim and, if not, trial would still proceed more expeditiously once the EEOC had completed its investigation and made its findings. The state case proceeded to trial on the remaining counts. The trial court gave judgment for the University on appellant's remaining claims and the Hawaii Supreme Court affirmed. Abramson v. Board of Regents, 56 Haw. 680, 548 P.2d 253 (1976). The University did not appeal the trial court's order dismissing Count III without prejudice to a federal sex discrimination suit.
 
 
 9
 Appellant during 1973 did not restrict her litigation to that just described. On August 27, 1973, the complaint pending in the federal district court for the District of Hawaii, Civil No. 73-3830, entitled O'Reilly v. Chang, was amended to include Abramson as a named plaintiff. The suit was brought against the University by certain students and faculty at New College, the experimental program in which appellant participated during her terminal year and after the expiration of her terminal appointment in 1972. The suit challenged the University's decision to close New College, primarily on due process grounds. Abramson also alleged contractual violations in her firing. The district court found no wrong cognizable under federal law and denied a preliminary injunction September 20, 1973. On March 25, 1975 the court approved and entered a stipulation of dismissal with prejudice.
 
 
 10
 C. Present Suit.
 
 
 11
 On February 27, 1974 the EEOC found in favor of appellant on her charges and eventually recommended substantial compensatory and punitive damages. Conciliation efforts with the University failed, and, on March 27, 1975, this action was filed. Appellant amended her complaint August 28, 1975 and again on December 7, 1976. She bases her suit on the charges she had filed with the EEOC and the Labor Department in 1972. On March 29, 1977, the district court filed its written order granting the University's motion for summary judgment with respect to all of appellant's Title VII allegations. The lower court did not then dismiss the equal pay claims.
 
 
 12
 In entering judgment against appellant's Title VII claims, the district court noted that Title VII was not made applicable to educational institutions until March 24, 1972. The court concluded that the denial of tenure, even if based on Dr. Abramson's sex, did not violate the law since it occurred prior to that date. The court also held that appellant's EEOC charge in June, 1972 was untimely insofar as it challenged the denial of tenure, since it was not filed within 300 days of June, 1971. The court rejected the retaliation claims, holding that to the extent the University may have retaliated against appellant for challenging her tenure denial, such retaliation could not have been unlawful because "the underlying basis was the denial of tenure on account of sex (which) was not an unlawful practice at the time it occurred." It also held the retaliation claims barred by Res judicata "because such claims of retaliation were finally disposed of or should have been raised" in appellant's two previous suits against the University. Appellant appealed from the order dismissing her Title VII claims under 28 U.S.C. § 1292(a), which permits appeal from "interlocutory orders of the district courts . . . refusing . . . injunctions." See Waters v. Heublein, Inc., 547 F.2d 466, 468 (9th Cir. 1976), Cert. denied, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977).
 
 
 13
 Four months after the partial summary judgment, the University moved to reinstate the pretrial conference for the remaining equal pay claim. In response, appellant moved to stay all proceedings pending appeal. After argument, on August 29, 1977, the district court denied the Motion for Stay and set trial for November 7, 1977. Abramson decided to dismiss voluntarily her equal pay claim and so informed the court and the appellees. She then made a final motion for a continuance of her trial date pending decision on appeal. The trial court denied her motion and judgment was entered December 14, 1977. She appealed from this judgment, and we consolidated both aspects of the case for decision.
 
 
 14
 II. QUESTIONS PRESENTED.
 
 
 15
 Our disposition of these appeals requires that we evaluate the appropriateness of two distinct actions by the trial court: the summary judgment of the Title VII claims and the dismissal of the equal pay claim. The Title VII disposition by the trial court presents three issues: 1) Whether Res judicata bars appellant's discrimination and retaliation claims; 2) Whether the district court erred when it concluded that Title VII of the Civil Rights Act did not apply to appellant's case because the effective date of her tenure denial occurred prior to March 24, 1972; and 3) Whether appellant's retaliation claims are actionable. The equal pay claim appeal asks us to decide whether the trial court abused its discretion in denying appellant a continuance under the facts of this case. Each of these issues will be discussed.
 
 
 16
 III. TITLE VII CLAIMS.
 
 
 17
 A. Applicability of Res Judicata.
 
 
 18
 The district court held that because of appellant's prior litigation in both the federal and state of Hawaii courts Res judicata barred appellant's sex discrimination and retaliation claims. The elements and consequences of Res judicata have been described as follows: "A final judgment on the merits between parties who in law are the same operates as a bar to a subsequent action upon the same cause of action, settling not only every issue that was raised, but also every issue that might have been raised in the first action." Flynn v. State Board of Chiropractic Examiners, 418 F.2d 668, 668 (9th Cir. 1969). Appellant makes three arguments against applying the doctrine in this case: 1) The district court did not take proper judicial notice of the existence of the prior actions; 2) Res judicata should not apply to state actions preceding federal Title VII suits because to do so would violate the policy behind the Civil Rights Act; and 3) Res judicata, in any event, does not apply on these facts. Because we agree with appellant's third argument, we do not reach the other two.[2]
 
 
 19
 Turning initially to the federal district court suit, O'Reilly v. Chang, we hold it clearly did not involve the same cause of action as either of those appellant now pursues. That suit challenged appellees' decision to close New College and to terminate several employees, a matter unrelated to appellant's claim that she was denied tenure discriminatorily a year prior to the closing of New College. Nor in itself does O'Reilly foreclose appellant's retaliation claims; although some of her claims those concerning her treatment at New College could have been there raised. Some factual questions perhaps may have been determined. But the gravamen of the prior suit was a contractual and constitutional challenge to the University action. Whether causes of action are identical for Res judicata purposes whether sufficient "identity of issues" exists to bar absolutely a subsequent action cannot be determined precisely by mechanistic application of a simple test. See Expert Electric, Inc. v. Levine, 554 F.2d 1227 (2d Cir.) Cert. denied, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). We believe in this case that appellant's claim that the University took several actions in retaliation for her claims filed with the EEOC or as acts discriminatory against her on the basis of her sex in violation of Title VII did not have the requisite coincidence of issues to have required that appellant litigate the entire claim in the prior suit. Her claims were at best peripheral to the broader issues presented in that case.
 
 
 20
 We also hold that the prior state court suit does not support application of Res judicata. Federal courts, as a rule, should accord full Res judicata effects to prior state court adjudications. Red Fox v. Red Fox,564 F.2d 361, 364 (9th Cir. 1977). See Expert Electric, Inc. v. Levine,supra; Neale v. Goldberg, 525 F.2d 332 (9th Cir. 1975).[3] Res judicata rests on the public policy favoring an end to mere contentious litigation. Stevenson v. International Paper Co., 516 F.2d 103, 109 (5th Cir. 1975). Justice requires the removal of the threat of repetitive litigation of the same causes of action. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948). In this case, however, appellant has not litigated in the state court her sex discrimination claims, now stated as a Title VII action. Such claims were dismissed by the state court in order to permit a later federal court action. This is that action. The dismissal was not improper. Hawaii Rule of Civil Procedure 41(a)(2) gives trial judges the power to dismiss suits "upon such terms and conditions as the court deems proper." Moreover the appellees did not appeal the trial court's decision to a higher Hawaiian court. To hold now that appellant's sex discrimination claims, which never were litigated in the state court because of deferral to a right to bring a federal court action, are barred, would deprive appellant of a day in court to which the state court recognized she was entitled and confuse a declination of responsibility with its assumption. This is not a case in which a plaintiff has been "permitted to fragment a single cause of action and to litigate piecemeal the issues which could have been resolved in one action." Flynn v. State Board of Chiropractic Examiners, supra, 418 F.2d at 668. No unfairness to appellees will result in allowing appellant an opportunity to prove her case.
 
 
 21
 Our holding also protects the policies behind Title VII. At the time the state trial court granted its dismissal of appellant's sex discrimination claims, the EEOC had not completed its processing of appellant's charges. By reserving the sex discrimination claim, the state court preserved the hope that conciliation would resolve the matter. This ruling is consistent with the federal policy favoring conciliation of employment discrimination claims prior to, and if possible in place of, litigation of such claims. See Occidental Life Insurance Co. v. EEOC, 432 U.S. 355, 368, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); Cunningham v. Litton Industries, 413 F.2d 887, 891 (9th Cir. 1969).
 
 
 22
 B. Application of Title VII.
 
 
 23
 Title VII, as originally enacted, exempted from its coverage "an educational institution with respect to the employment of individuals to perform work connected with the educational activities of such institution." Pub.L. 88-352 § 702 (1964). Congress deleted this exemption, effective March 24, 1972, by § 3 of the Equal Employment Opportunity Act of 1972, Pub.L. 92-261.[4] The 1972 amendments subjecting educational institutions to the requirements of Title VII are not to be applied retroactively. Faulkner v. Federation of Preschool and Community Education Centers, Inc., 564 F.2d 327 (9th Cir. 1977); Weise v. Syracuse University, 522 F.2d 397, 411 (2d Cir. 1975); Cohen v. Illinois Institute of Technology, 524 F.2d 818 (7th Cir. 1975), Cert. denied, 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976).
 
 
 24
 Only acts of discrimination committed by appellees after March 24, 1972 are actionable. As the court pointed out in Weise, prior to 1972 universities were free, as far as Title VII was concerned, to discriminate in their employment practices and actions. 522 F.2d at 410. Inasmuch as the amendments are not retroactive, such discriminatory acts, not prohibited by Title VII when they were effected, cannot now be the basis for the imposition of liability. Title VII created no duty running from appellees to appellant until March 24, 1972. Therefore we must concern ourselves with actions taken after that date.
 
 
 25
 1. Tenure Denial.
 
 
 26
 The district court found that no material issue of fact existed as to the date tenure was denied; it held that denial was final in June, 1971. Appellant contends that a disputed issue of fact exists as to the date tenure can be said to have been denied. She asserts that the denial of tenure was not final until she was informed by the University President in May, 1972 that the tenure issue was closed.
 
 
 27
 The standards for awarding summary judgment are set forth in Rule 56, Fed.R.Civ.P., which provides that such judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To oppose successfully a motion for summary judgment a party must offer some evidence at least outlining a factual dispute. Smith v. Mack Trucks, Inc., 505 F.2d 1248, 1249 (9th Cir. 1974). The court must determine, viewing all evidence "in the light most favorable to the party opposing the motion," whether a genuine issue of material fact exists. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); Stansifer v. Chrysler Motors Corp., 487 F.2d 59, 63 (9th Cir. 1973).
 
 
 28
 The parties to this suit dispute vigorously the date on which the denial of tenure became final. There exists good reason for this dispute. If the denial was final prior to March 24, 1972, and appellees did not commit any other discriminatory act subsequent to that date, the appellant's action fails. On the other hand, a denial not final until March 24, 1972 or later makes possible the survival of the appellant's action.
 
 
 29
 Three Pennsylvania district court cases must be considered in determining the point at which tenure decisions become final. Johnson v. University of Pittsburgh, 359 F.Supp. 1002 (W.D.Pa.1973); Rackin v. University of Pennsylvania, 386 F.Supp. 992 (E.D.Pa.1974); Presseisen v. Swarthmore College, 386 F.Supp. 1337 (E.D.Pa.1974). In each of these cases, the individual denied tenure was employed by a school under a contract which extended beyond March 24, 1972. The court in each case held Title VII applicable because the employee felt the effect of the discriminatory action within the effective period of the 1972 amendments. The court in Johnson stated:
 
 
 30
 We hold that the 1972 amendments cannot be rendered nugatory by making a decision before March 24, 1972, to become effective thereafter as a discriminatory discharge and refusal to grant tenure thereafter is as much a violation of the Act as any other sexual discrimination.
 
 
 31
 359 F.Supp. at 1007. Cf. Egelston v. State University College at Genesco, 535 F.2d 752 (2d Cir. 1976) (Title VII suit timely filed because critical date was date employment contract ended).
 
 
 32
 In this case appellant was employed under a series of one-year contracts, none of which at the time of the June, 1971 decision extended appellant's employment to or beyond March 24, 1972. Nevertheless, the University was obligated upon the June, 1971 decision to offer her a terminal year. It could be argued, therefore, that, inasmuch as the consequences of the tenure denial extended at least until the expiration of the terminal year, appellant has a Title VII cause of action. We believe, however, that the Pennsylvania district courts misdirected their attention. The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful. Liability of the appellees must be premised on discriminatory action taken by them on or after March 24, 1972; if the tenure decision was final prior to that date, and no other discriminatory action took place thereafter, appellant's action was properly dismissed.
 
 
 33
 A discriminatory refusal to reconsider a denial of tenure on or after March 24, 1972 can be viewed either as an additional discriminatory act or as the final denial of tenure. Weise v. Syracuse University, 522 F.2d 397 (2d Cir. 1975) depicts the former. In Weise, two individuals were terminated prior to March 24, 1972. Three years later, at a time subsequent to the effective date of the 1972 amendments, they asked for reconsideration and were refused. The Court said:
 
 
 34
 We think the Act's sweep is sufficiently broad to include within the definition of discrimination with respect to terms, conditions or privileges of employment A discriminatory refusal, in violation of the employer's own established internal procedures, to reconsider an employee's termination.
 
 
 35
 522 F.2d at 409-10 (emphasis added).
 
 
 36
 On the other hand, when requests for reconsideration are an ordinary and generally accepted part of the tenure decision process, a presidential refusal to overturn a departmental denial of tenure can be considered as The final denial of tenure. While we doubt very much that refusals to reconsider following long delayed requests for reconsideration, which are not a part of the normal tenure process, should be considered as additional discriminatory acts,[5] appellant here seeks to put in issue the question whether or not in this case the President's refusal to reconsider was the act constituting the final denial of tenure.
 
 
 37
 In reliance upon guidelines entitled "Academic Tenure, Policy and Procedures" approved by the Board of Regents May 22, 1969, appellees insist that tenure was denied in June, 1971. Section two of those guidelines states, in part:
 
 
 38
 In the final year of the specified probationary period, the Board of Regents shall notify the faculty member by June 30 whether it will grant or refuse to grant tenure on July 1 of the succeeding year. If tenure is granted, the grant shall be non-revocable and the faculty member, without doing more, shall be tenured on July 1. If tenure is refused, the faculty member shall be offered a terminal year's contract. If notification of the granting of tenure or refusal of tenure is not given in writing by June 30 of the final year of probation, the faculty member shall receive tenure.
 
 
 39
 The appellees argue and the district court held that because these procedural guidelines provide no formal reconsideration process the denial of tenure was final in June, 1971.
 
 
 40
 On this record we must reject this holding. It ignores the possibility that the tenure decision process may in fact not be reflected accurately by the guidelines. Appellant Abramson asserts that the University at all relevant levels regularly reviews tenure decisions during the terminal year. She offered to prove at least three instances in which faculty members who were originally denied tenure were reconsidered and granted tenure during their terminal years. The guidelines do not preclude explicitly such reconsideration. Moreover the record suggests the possibility that the June 30 deadline for notification was complied with in appellant's case to avoid an automatic tenure grant, rather than as the final step in appellant's consideration process. Appellant's claims should be determined by reference to how the University in fact makes tenure decisions, not by reference to how their guidelines say they should.
 
 
 41
 We hold, therefore, that the district court's summary judgment against the appellant's Title VII claims was improper. Appellant has demonstrated the existence of a genuine issue of material fact. She should have an opportunity to demonstrate that the ordinary and generally accepted tenure decision process included a review of reconsideration requests in the final year and that in her case the decision of the President in May, 1972 to refuse to review her tenure denial constituted discrimination against her on the basis of sex. Under such circumstances the President's refusal to reconsider, after the effective date of the amendments, would be a discriminatory act violative of Title VII.[6]
 
 
 42
 It does not follow, of course, that the appellant will be successful in establishing that the tenure denial only became effective subsequent to the date the 1972 amendments became applicable and was based on sex discrimination. Doubt with respect to her ultimate success, however, does not justify the granting of the appellees' motion for summary judgment so long as a genuine issue of material fact with respect to the matter exists. Rule 56, Fed.R.Civ.P., exists not to avoid trials, the outcome of which in the opinion of the trial judge are reasonably predictable, but to terminate litigation on claims with respect to which there exists no genuine issue of material fact. 6 Moore's Federal Practice, P 56.15(1), at 56-391 (2d Ed. 1976). The absence of such an issue makes the outcome of any trial thereon predictable, but predictability of trial outcome can exist even when such issues exist. When that is the case, summary judgment is improper. Although rules do not require findings of fact and conclusions of law in decisions on motions for summary judgment, such findings are permissible and helpful to appellate review. 6 Moore's Federal Practice P 56.02(11), at 56-48 (2d ed. 1976). See Boazman v. Economics Laboratory, Inc., 537 F.2d 210 (5th Cir. 1976). Moreover, it would be helpful to the parties and to the reviewing court if the recitation of findings set forth the facts with respect to which no genuine material issue exists and the reasons why on those facts summary judgment is proper. Wright & Miller, Federal Practice and Procedure: Civil § 2575 at 692-93 (1971). See Brown v. Gamm, 525 F.2d 60, 61 n.2 (8th Cir. 1975).
 
 
 43
 2. Retaliation Claims.
 
 
 44
 We also believe the district court erred in granting summary judgment with respect to appellant's retaliation claims. If appellant can establish that actions taken subsequent to the effective date of the 1972 amendments were in retaliation for her filing of charges or participation in the EEOC process, she would be entitled to judgment on her claims. On the basis of this record we cannot say that no genuine issue of material fact exists with respect to these claims. Retaliation could exist even were it determined that the denial of tenure was final prior to March 24, 1972. Retaliation for participating in the EEOC process subsequent to such date would support a Title VII action even if the tenure denial was final in June, 1972.[7]
 
 
 45
 Winsey v. Pace College, 394 F.Supp. 1324 (S.D.N.Y.1975) is not inconsistent with this conclusion. Winsey involved opposition, through state proceedings, to a practice that occurred prior to March 24, 1972. The court held that such opposition could not extend the time period and make subsequent acts illegal retaliation. Appellant's retaliation claims arise out of a different portion of 42 U.S.C. § 2000e-3(a) which provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." In Winsey, no charge to the EEOC had been filed; moreover, Winsey involved the "opposition" clause rather than the "participation" clause of the statute. An employee's "participation" in the EEOC process is protected from retaliation whether or not the charge filed with the EEOC is meritorious. Pettway v. American Cast Iron Pipe Co., 411 F.2d 998 (5th Cir. 1969); EEOC v. Kallir, Philips, Ross, Inc., 401 F.Supp. 66 (S.D.N.Y.1975), Aff'd, 559 F.2d 1203 (2d Cir.), Cert. denied, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977); Bradford v. Sloan Paper Co., 383 F.Supp. 1157 (N.D.Ala.1974). A lack of merit springing from the fact that the discrimination occurred prior to March 24, 1972 should not insulate retaliatory acts subsequent to that date. The statute is directed against retaliation for using the processes of the EEOC; it does not sanction retaliation against those whose use is unwarranted.
 
 
 46
 IV. EQUAL PAY CLAIM.
 
 
 47
 No error exists with respect to the appellant's equal pay claim. It is well settled that a trial judge has wide discretion to grant or deny continuances. Ungar v. Sarafite, 376 U.S. 575, 591, 84 S.Ct. 841, 11 L.Ed.2d 921 (1963); United States v. Lustig, 555 F.2d 737, 744 (9th Cir. 1977), Cert. denied, 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978). A party must demonstrate actual prejudice before a trial court's denial of a continuance will be reversed. United States v. Harris, 501 F.2d 1, 4-5 (9th Cir. 1974); Daut v. United States, 405 F.2d 312, 315 (9th Cir. 1968), Cert. denied, 402 U.S. 945, 91 S.Ct. 1624, 29 L.Ed.2d 114 (1971). We will disturb a lower court's ruling only if there has been a clear abuse of discretion. United States v. Young, 470 F.2d 962, 964 (9th Cir. 1972), Cert. denied, 410 U.S. 967, 93 S.Ct. 1444, 35 L.Ed.2d 701 (1973).
 
 
 48
 In attempting to meet this heavy burden, appellant claims she was unable financially both to pursue her appeal of the sex discrimination claim and to go to trial on her equal pay claim. She argues that a continuance pending disposition of the Title VII appeal would not have prejudiced appellees and that the determination of the appeal would have been controlling on the equal pay claim. Appellant also asserts that the Title VII and equal pay claims have factual issues in common. A review of the record fails to convince us that the trial court abused its discretion.[8]
 
 
 49
 Deference to the trial judge's greater familiarity with the situation in a suit and the equities of the parties is a sound rule grounded in experience. The Supreme Court noted long ago that"discretion" denotes the absence of a hard and fast rule . . . . When invoked as a guide to judicial action, it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.
 
 
 50
 Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931).
 
 
 51
 In this case the trial judge could have granted a continuance, but he chose not to do so. Litigation brings with it financial burden; but extended continuances can be accompanied by equal burdens. We cannot say that the trial judge struck an impermissible balance between these burdens in denying appellant's request for a continuance.
 
 
 52
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 
 
 
 *
 Hon. David W. Williams, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Under University regulations, a teacher has to be notified by June 30 of her final probationary year whether tenure will be granted. Otherwise, tenure is automatically conferred
 
 
 [2]
 Our discussion reaches only the conclusion that Res judicata is not an absolute bar to appellant's action. The principle of collateral estoppel renders prior judgments conclusive only as to matters necessarily litigated and determined in the prior proceeding. Southern Pacific R.R. Co. v. United States, 168 U.S. 1, 48-49, 18 S.Ct. 18, 42 L.Ed. 355 (1897); Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597-98, 68 S.Ct. 715, 92 L.Ed. 898 (1948). It appears that collateral estoppel may bar relitigation of several factual issues in this suit. The record, however, is insufficient to determine which issues may be effected at this stage. On remand the district court must consider the two prior suits under the standards of collateral estoppel to determine precisely what factual issues remain to be decided
 
 
 [3]
 Appellant argues, as noted above, that the policy behind Title VII should prevent Res judicata from ever barring federal Title VII suits following state actions. Although this court has recognized that in some instances countervailing and compelling federal policies will justify departures from strict application of Res judicata, Red Fox v. Red Fox, supra (federal suit involving Indian Civil Rights Act), our disposition makes it unnecessary for us to express an opinion on appellant's position
 
 
 [4]
 The pertinent section, codified as 42 U.S.C. § 2000e-1 now provides:
 § 2000e-1. Subchapter not applicable to employment of aliens outside State and individuals for performance of activities or religious corporations, associations, educational institutions, or societies
 This subchapter shall not apply to an employer with respect to the employment of aliens outside any State, or to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.
 
 
 [5]
 See Collins v. United Air Lines, Inc., 514 F.2d 594 (9th Cir. 1975). In Collins we held that no separate discriminatory act occurred when United denied a request for reinstatement three years after it changed a discriminatory policy and agreed to reinstate those stewardesses who had filed union grievances or EEOC complaints. In that case the request for reinstatement sought merely to redress the original termination. 514 F.2d at 596. The employee had resigned four-and-one-half years prior to her reinstatement request; reconsideration clearly was not a normal part of her discharge
 
 
 [6]
 In light of our decision as to the date that the Title VII action might have arisen, we need not discuss the district court's decision that appellant's claim was not timely filed. If she has an action for the tenure denial under Title VII, it necessarily was filed in the statutory period
 
 
 [7]
 To the extent the district court considered appellees' acts subsequent to the effective date of the 1972 amendments as independent discriminatory acts, it held them barred by Res judicata. For the reasons stated above, that doctrine does not apply here. On remand, however, the trial court should consider the extent to which collateral estoppel may apply
 
 
 [8]
 Appellant also argues on appeal that her appeal of the district court's interlocutory order pursuant to 28 U.S.C. § 1292(a)(1) divested the district court of jurisdiction to hear the remaining equal pay claim. Her view that the amendment to the statute allowing interlocutory appeals from orders concerning injunctions reversed the established rule that appeals do not cause automatic stays is unsupported and without merit. In this case the suit proceeded on a claim wholly separate in theory from the Title VII claims. Appellant's choice to appeal the Title VII disposition did not divest the trial court of jurisdiction over her claim under the Equal Pay Act of 1963, 29 U.S.C. § 206(d)