**Christine Searcy GLASGOW, Plaintiff,**

v.

**NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, et al., Defendants.**

**No. 80–127–CIV–8.**

United States District Court, E.D. North Carolina, Wilson Division.

Sept. 2, 1981.

William G. Pfefferkorn, J. Wilson Parker, Pfefferkorn & Cooley, Winston-Salem, N. C., for plaintiff.

J. Chris Prather, Asst. Atty. Gen., James W. Lea, III, Associate Atty. Gen., N. C. Dept. of Justice, Raleigh, N. C., Itimous T. Valentine, Jr., Nashville, N. C., James F. Rogerson, Wilson, N. C., for defendants.

ORDER

DUPREE, Chief Judge.

By complaint filed November 28, 1980, plaintiff brings this action alleging that she was discharged from employment with the North Carolina Department of Transportation as punishment for her exercise of her First Amendment rights. She seeks declaratory and injunctive relief and compensatory and punitive damages pursuant to 42 U.S.C. §§ 1983 and 1985(3). The action is brought against the North Carolina Department of Transportation (Department) and three of the Department's officers. Defendants have filed motions to dismiss and for summary judgment which are ripe for disposition.

The complaint alleges and it is undisputed that plaintiff began work with the Department in 1973 as a stenographer in a departmental office in Nashville, North Carolina. In 1975 her job classification was changed to Clerk-Typist. Her employment was without incident until January, 1977, when she began making allegations both within the Department and to the news media that defendants Gardner and Coleman, engineers employed by the Department, were engaged in surveying and land development activities for private parties. These activities were claimed to occur both during the work week and during off hours and were claimed to involve other state employees. Effective May 28, 1977, plaintiff was transferred to the Rocky Mount departmental office allegedly for punitive reasons. Plaintiff objected to the transfer and pursued a grievance to a hearing before the Department's Employees Relations Committee which affirmed the transfer in August, 1977.

Beginning in early September, 1977, plaintiff was given full responsibility for maintaining project diaries, a duty she had previously shared with another employee. Plaintiff did not keep the diaries current and was notified by defendant Gibson on October 21, 1977, that failure to bring the diaries up to date would result in her dismissal. On November 7 plaintiff did not report for work and her daughter asked defendant Gibson to place plaintiff on sick leave. On November 16 plaintiff's husband came to the office to retrieve plaintiff's personal belongings and to request retirement forms. On December 1 defendant Gibson wrote plaintiff informing her that on November 29 she had exhausted all of her annual and sick leave, had failed to contact the Department regarding her intentions, and was terminated as of November 29. It is uncontroverted that during the period from November 7 to November 29, 1977, defendant Gibson attempted on several occasions to contact plaintiff seeking information concerning her intentions regarding continued employment but received no response from her. *See* correspondence in plaintiff's personnel file submitted in response to plaintiff's first set of interrogatories.

On November 28, 1980, plaintiff instituted this action, alleging that the defendants conspired and orchestrated a pattern of harassment that culminated in her dismissal, such actions being in retaliation for her allegations that two of the defendants had been doing private work during their employment by the Department. The alleged harassment includes the transfer to the Rocky Mount office, the imposition of overly-burdensome work responsibilities, and abusive and intimidating treatment. Plaintiff alleges that due to the harassment she was so distressed that on November 7 she had to take sick leave and was unable to return, and that the discharge effective November 29 was solely for purposes of punishing her for her activities protected by the First Amendment. Complaint, ¶ 18, 24.

The question before the court is the effect of the three-year statute of limitations which the parties agree is applicable here.

*See Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Bireline v. Seagondollar,* 567 F.2d 260 (4th Cir. 1977); *Cox v. Stanton,* 529 F.2d 47 (4th Cir. 1975). The only action by defendants falling within the three-year period is the termination on November 29, communicated by letter of December 1, 1977. The alleged protected speech and consequent harassment all occurred outside of the limitations period. As the Supreme Court recently clarified, this court's focus must be upon the time of the discriminatory acts themselves, not upon the time at which the consequences of the acts "became most painful." *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980), *quoting Abramson v. University of Hawaii,* 594 F.2d 202, 209 (9th Cir. 1979). In *Ricks* the Court approved dismissal of a Title VII action in which the plaintiff filed his charge with the EEOC within 180 days after his actual termination but not within 180 days of being notified that he was being denied tenure and that his employment would end. The Court noted that plaintiff had not alleged that the ultimate termination was discriminatory in the sense that it was implemented in a fashion different from the manner in which the defendant college terminated other professors who had been denied tenure, but rather only alleged that the tenure decision itself was discriminatory. The Court acknowledged that employment termination resulting from alleged discrimination "can present widely varying circumstances" which necessitate a case-by-case analysis. *Id.* at 504 n. 9.

In the present case, the complaint alleges that the dismissal itself, and not only the preceding pattern of alleged harassment is unlawfully punitive. The case is not before the court on a motion to dismiss, however, for the parties have submitted a substantial quantity of discovery material and affidavits. Reviewing the entire record, it is clear that the act of discharge, taken alone, must be found as a matter of law not to have been an unlawful act.

Plaintiff has presented a relatively strong case of harassment which would certainly withstand summary judgment were it not for the limitations problem. Had plaintiff resigned and brought this action within three years of the date of resignation, plaintiff would have a strong case of constructive discharge. *See, e. g., Downey v. Southern Natural Gas Company,* 649 F.2d 302 (5th Cir. 1981). But plaintiff left employment on November 7 and did not inform the Department at any time subsequent to that date of a desire to return to work or to resign. Plaintiff's husband retrieved her personal belongings from the office on November 16. At the expiration of her sick and annual leave, she was terminated as a matter of course since she did not report for work. There is no allegation or showing that this termination after a failure to report differed discriminatorily from the manner in which the Department terminates other employees who fail to report. The fact that plaintiff continued in employment pending expiration of her accrued annual and sick leave, "without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Delaware State College v. Ricks, supra,* at 504. *C.f., Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 192 (3d Cir. 1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Doski v. M. Goldseker Company,* 11 F.E.P. Cases 468 (D.Md.1975), *aff'd in relevant part and remanded,* 539 F.2d 1326, 1328 n. 3 (4th Cir. 1976).

For these reasons, defendants' motion for summary judgment must be granted and the action is hereby dismissed.

SO ORDERED.