**John LAYAOU, Plaintiff,**

**v.**

**XEROX CORPORATION and Peter De-Mauro, individually and in his capacity as an employee of Xerox Corporation, Defendants.**

No. 95–CV–6388L.

United States District Court,
W.D. New York.

March 27, 1998.

Nira T. Kermisch, Rochester, NY, for John Layaou, plaintiff.

Margaret A. Clemens, Nixon, Hargrave, Devans & Doyle LLP, Rochester, NY, for defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, John Layaou, commenced this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff, who was born in 1940, alleges that defendants Xerox Corporation ("Xerox") and Peter DeMauro, plaintiff's former supervisor, terminated his employment in January 1994 on account of his age. Plaintiff also asserts an age discrimination claim under the New York State Human Rights Law ("HRL"), N.Y.Exec. L. § 296. In addition, plaintiff asserts a claim (the legal basis for which is not spelled out in the complaint) alleging that Xerox refused to pay him certain benefits to which he was entitled under

the "Xerox Retirement Income Guarantee Plan" ("RIGP").

Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has cross-moved for summary judgment on the issue of liability, and for leave to amend the complaint. Both sides have also moved to exclude each other's expert testimony under Rules 403 and 702 of the Federal Rules of Evidence.

## BACKGROUND

Plaintiff began working for Xerox in 1972. He was terminated from employment in 1983, but rehired in 1987. At the time of his termination in 1994, plaintiff was employed as an analyst[1] in the Multinational Customer and Service Education ("MC & SE") unit of Xerox's Document Production Systems ("DPS") group.

In December 1993, Xerox announced that for financial reasons, it was going to implement a worldwide reduction in force ("RIF") beginning in 1994, which would reduce its 97,500–employee workforce by some 10,000 employees. Xerox stated that each of its units would determine the number of employees within that organization that would be terminated, and the method of doing so.

In DPS, employees were to be ranked by their manager in four areas: work quality, work speed, work orientation, and work skills. The scores were entered onto a form known as a Contribution Assessment Form ("CAF"). When this process was completed, the employees would be stack-ranked against each other, and in general, the lowest-ranking employees would be terminated.

Although plaintiff disputes this, according to defendants, Xerox put in place a number of safeguards to ensure that the RIF was carried out fairly and without disparately affecting any protected categories of employees. Xerox states that senior managers would review employees' CAFs for consistency and fairness, and that Xerox's legal department also conducted analyses of the ter-

mination recommendations to make sure that they would not have a discriminatory effect.

Layaou was evaluated by Peter DeMauro, his manager. DeMauro gave plaintiff a total score of eight out of a possible twenty. Xerox states that plaintiff's rating was then evaluated by a group of senior managers, although plaintiff denies this. At any rate, plaintiff was stack-ranked against the 182 other employees in MC & SE. Seven employees with scores lower than eleven, including Layaou, were selected for termination. Four others with such scores were not terminated. Two of those four employees were age sixty-three, and the other two were both fifty years old. In all, seven of the 150 employees age forty and over were terminated, and none of the thirty-three employees under forty were terminated. Plaintiff was informed of his termination around January 18, 1994.

In addition to his claim that he was terminated on account of his age, plaintiff alleges that he applied for several positions that became open at Xerox during 1994, and that his applications were rejected without an interview. He claims that he was more qualified than the younger persons who were hired for those positions.

## DISCUSSION

### I. Statute of Limitations on Discriminatory Discharge Claims

■ Defendants contend that plaintiff's ADEA claim relating to his discharge is time-barred. Under the ADEA, an action may not be commenced until sixty days after the filing of a charge with the EEOC, and the EEOC charge in turn must have been filed "within 300 days after the alleged unlawful practice occurred ..." Failure to file a timely charge of age discrimination bars a subsequent action under the ADEA. *Dillman v. Combustion Engineering, Inc.,* 784 F.2d 57, 59 (2d Cir.1986) ("No civil action based on a claim of age discrimination may be brought in a federal court unless the plaintiff has timely filed his claim with the EEOC"). The Second Circuit has applied this requirement

---

**1.** The papers variously refer to plaintiff's position as "Training Analyst," "Senior Service Edu-

cation Analyst," and "Curriculum and Documentation Analyst."

strictly. *See, e.g., Economu,* 829 F.2d at 315 311, 315–16 (2d Cir.1987) (affirming dismissal of ADEA claim where EEOC claim was filed 301 days after alleged act of discrimination).

In the case at bar, Layaou filed his EEOC charge on April 7, 1995. Thus, any claims he makes with respect to acts occurring before June 11, 1994 are untimely. Since plaintiff was notified of his termination in January 1994, his claim arising from his termination is time-barred.

■ Plaintiff contends that his action is not time-barred because he continued to be an employee, albeit on "inactive status," until March 1995. As the Second Circuit has stated, however, "[t]he 300–day period, in the case of a discriminatory discharge, starts running on the date when the employee receives a definite *notice* of the termination, not upon his discharge." *Miller v. International Tel. & Tel. Corp.,* 755 F.2d 20, 23 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). The court in *Miller* held that the plaintiff's 300–day period under the ADEA began to run on August 28, 1978, when the plaintiff was told that, absent exceptional circumstances, he would be removed from the payroll on April 1, 1979 (which he was). Thus, "the last date of employment may not always coincide with the start of the statutory limitation clock." *Economu,* 829 F.2d at 315.

This rule was set forth by the Supreme Court in *Delaware State Coll. v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), in which the Court held that the limitations period under Title VII commenced at the time the decision to deny the plaintiff tenure (which inevitably led to termination a year later) was made and communicated to the plaintiff. The Court stated that "[t]he proper focus is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts became most painful." *Id.* (quoting *Abramson v. University of Hawaii,* 594 F.2d 202, 209 (1979)). "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* at 257.

The Court reaffirmed that rule the following year in *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). In *Chardon,* the plaintiff school teachers had been notified prior to June 18, 1977 that they would be terminated at a specified date between June 30 and August 8, 1977. They sued under 42 U.S.C. § 1983, alleging that the decision to terminate them was made for purely political reasons, in violation of their rights under the First Amendment. Stating that "[t]he fact of termination is not itself an illegal act," *id.* at 8, the Court held that the one-year limitations period began to run when the plaintiffs received notice that they would be terminated, and that the suits were therefore untimely. *See also American Airlines, Inc. v. Cardoza–Rodriguez,* 133 F.3d 111, 123 (1st Cir.1998) (limitations period in ADEA case commenced when plaintiffs elected to participate in a voluntary early retirement program—which they alleged was a charade meant to mask the employer's age discrimination—even though they continued to work for several months before they were actually terminated).

■ In the case at bar, plaintiff admits that he was told in January 1994 that he would be terminated, though he would continue to receive a salary until March 1995. Plaintiff's Aff., sworn to Feb. 26, 1998, ¶ 2. He states that "[a]fter January 1994, [he] had no duties or any authority at Xerox." *Id.* ¶ 5. A letter dated January 18, 1994 from DeMauro to plaintiff also states, "you are being given separation notice effective January 18, 1994. This action is expected to be permanent.... Salary continuance will begin on March 19, 1994 and *you will be separated* from Xerox when your salary continuance ends." Clemens Aff., sworn to Feb. 27, 1998, Ex. A (emphasis added). It is plain, therefore, that his 300–day period commenced in January 1994, and had long since expired when plaintiff filed his EEOC complaint on April 7, 1995.

Plaintiff also contends that documents submitted by defendant refer both to January 18, 1994 and to March 19, 1994 as his termination date. That is irrelevant because even if March 19, 1994 were the correct date plaintiff's EEOC complaint was still untimely. In addition, as DeMauro's letter indi-

cates (and as confirmed by a Xerox internal memorandum concerning the RIF, *see* Anne Mulcahy Aff., sworn to Apr. 11, 1997, Ex. C), March 19 was simply the date on which plaintiff was put on inactive status. The fact remains that he was notified of his termination on January 18, 1994.

■ Plaintiff also contends that his ADEA claim is timely under a continuing-violation theory. Where discriminatory acts occur pursuant to a continuing practice and policy of discrimination, the limitations period may be delayed until the last discriminatory act in furtherance of the policy. *Miller*, 755 F.2d at 25. Where applicable, this rule allows claims of discrimination to be deemed timely even though they would be untimely standing alone. *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994).

■ There is no simple test for determining whether conduct constitutes a continuing violation. Generally, the "exception applies to cases involving specific discriminatory policies or mechanisms ..." *Id.; see, e.g., O'Malley v. GTE Serv. Corp.*, 758 F.2d 818 (2d Cir.1985) (enforcement of discriminatory mandatory retirement system is continuing violation). Thus, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert*, 10 F.3d at 53.

Plaintiff's continuing-violation theory is based on the fact that he has alleged that both his termination and Xerox's failure to rehire him when he applied for certain positions in 1994 were discriminatory. Plaintiff contends that these events were part of an ongoing practice of age discrimination.

■ A plaintiff may rely on a continuing-violation theory to avoid having his claim time-barred "provided such a continuing violation is *clearly*" asserted both in the EEOC filing and in the complaint." *Miller v. Int'l Tel. and Tel. Corp.*, 755 F.2d 20, 25 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985) (emphasis added). Whether plaintiff in the instant case clearly alleged a continuing-violation theory in his EEOC complaint is doubtful at best; he alleged "that he was laid off and not rehired because of his age," and that the last incident of discrimination, which presumably was defendant's failure to rehire plaintiff, occurred on December 23, 1994, Defendant's Motion Ex. B, but he did not expressly allege that these acts constituted an ongoing, continuing violation.

■ Even giving plaintiff the benefit of the doubt with respect to the adequacy of his EEOC pleading, the proof does not support his claim of a continuing violation. An employer's failure to rehire a plaintiff who alleges a discriminatory discharge does not give rise to a continuing violation. Were that the case, a terminated employee whose claim would otherwise be time-barred could easily circumvent the ADEA's 300–day filing requirement simply by applying for reinstatement. *Burnam v. Amoco Container Co.*, 755 F.2d 893, 894–95 (11th Cir.1985) (defendant's failure to rehire plaintiff did not make discriminatory-discharge claim timely); *Daughtry v. King's Dep't Stores, Inc.*, 608 F.2d 906, 909 (1st Cir.1979) (defendant's termination of plaintiff's employment was a "completed, one-time violation," and its failure to rehire him did not give rise to continuing violation); *White v. Zema Systems Corp.*, No. 95 C 7529, 1996 WL 666683 *3 (N.D.Ill. Nov.14, 1996) (original discharge and failure to rehire were not part of continuing violation); *Long v. Sears Roebuck & Co.*, No. CIV. A. 95–0141, 1995 WL 699926 *5 (E.D.Pa. Nov.20, 1995) (fact that plaintiff's administrative charge contained generic allegation that defendant's discriminatory practices were "of a continuing nature" did not suffice to permit plaintiff to add failure-to-rehire claim in his lawsuit, since a "claim for failure to rehire cannot be considered a continuation of the original age-based wrongful discharge"); *DeFazio v. Delta Air Lines, Inc.*, 849 F.Supp. 98, 102 (D.Mass.) (allegedly discriminatory discharge "cannot be transformed into a continuing violation by the mere fact of a refusal to rehire"), *aff'd*, 34 F.3d 1065 (1st Cir.1994); *Herber v. Boatmen's Bank of Tennessee*, 781 F.Supp. 1255, 1263–64 (W.D.Tenn.1991) ("It is well established that such a termination constitutes a completed act at the time it occurred, and that an employer's failure to

rehire does not constitute a continuing violation of the ADEA").[2]

■ Assuming *arguendo* that plaintiff's HRL claim is not time-barred, I nonetheless decline to exercise supplemental jurisdiction over it. Although, as explained below, I am not dismissing plaintiff's claim concerning RIGP benefits, that claim and the HRL claim concern entirely different matters and do not "form part of the same case or controversy ..." 28 U.S.C. § 1367(a). In addition, the RIGP claim relates to a relatively narrow issue concerning the proper interpretation of defendant's pension plan, and if the two claims were tried together I believe that the HRL claim could "substantially predominate[]" over the RIGP claim. 28 U.S.C. § 1367(c)(2).

## II. Xerox's Failure to Rehire Plaintiff

■ Plaintiff alleges that at various times after his termination, up to and including December 1994, he applied for certain positions that became open at Xerox, and that despite his qualifications, all his applications were denied. He alleges that Xerox's rejection of these applications was the result of age discrimination. Plaintiff's EEOC complaint also alleged that plaintiff was not rehired because of his age. Margaret A. Clemens Aff., sworn to Apr. 21, 1997, Ex. B. At least to the extent that this claim relates to job applications that were denied on or after June 11, 1994, then, this claim is timely.

On the merits, however, this claim must be denied. Virtually the only evidence that plaintiff has presented in support of this claim is the fact that he unsuccessfully applied for certain positions. There is nothing in the record indicating that his age had anything to do with Xerox's failure to rehire plaintiff.

In addition, defendants have submitted affidavits by some of the managers who made the decisions about whom to select for the openings that plaintiff had applied for. One of them, Robert E. Hamilton, Jr., states that in November 1994, he was hiring for the

position of Curriculum Document Analyst, and that he selected Judy Waldock over plaintiff because he thought she was better qualified. He states that Waldock was fifty years old at the time, just four years younger than plaintiff.

Another manager, Michael Wilcox, states that he was also hiring for the position of Curriculum Document Analyst in November 1994. He states that after reviewing the applications, including plaintiff's he decided that none of the applicants were sufficiently qualified, so he did not hire anyone for that position.

James Kraus, another manager, states that he was hiring for two positions in the same time period, a Service Education Analyst and a Customer Education Analyst. He selected John Smith and Ellen Fike respectively, who were then thirty-four and forty-six years old.

Plaintiff has not rebutted these statements. In fact, at his deposition plaintiff frequently admitted that he did not know who was hired for most of the jobs that he had applied for, or in some cases whether anyone was hired at all. *See* Layaou Depo. (Clemens Aff. Ex. D) at 73–74, 76, 78, 99, 105. He was able to identify the successful applicant for one position, but when asked how old that person was, plaintiff replied, "Over 40." *Id.* at 106.

Aside from the fact that some of the people who were chosen for these positions were younger than plaintiff, plaintiff relies on his belief that he was highly qualified for all the positions he applied for. He testified that he believed his age was the reason he was not offered a position because of the "[l]ack of anything else. ... It was not performance, it was not lack of tenure, it was not because I was new; there was no other reason." Plaintiff's Depo. at 96.

■ An employee's subjective opinion about his qualifications, however, is insufficient to give rise to a triable issue of fact concerning whether the employer's proffered reason for its actions is a pretext for discrimination. *Shapolia v. Los Alamos Nat'l Lab.*,

---

**2.** My dismissal of plaintiff's age discriminatory claims on these grounds renders moot the parties' motions to exclude each other's expert testi-

mony, which relate to statistical evidence concerning the RIF, and those motions are therefore denied as moot.

992 F.2d 1033, 1039 (10th Cir.1993) (employee's own assessment of his job performance is inadequate to raise issue of fact for trial); *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir.1991) ("The fact that an employee disagrees with an employer's evaluation of him does not prove pretext"). That is particularly true where the employer's decision whether to rehire plaintiff did not depend simply on whether he was qualified, but on whether he was the best candidate for the job. Since for the most part plaintiff does not even appear to know who was hired for these positions, his belief that he was qualified is of virtually no probative value.

Moreover, even assuming that plaintiff was qualified for some of these positions, and that some of these positions went to younger candidates, those facts are merely part of plaintiff's *prima facie* case. Without some additional proof of age discrimination, they are not enough to defeat a well-founded motion for summary judgment. *See Coleman v. Prudential Relocation*, 975 F.Supp. 234, 247 (1997) ("losing out to a younger candidate, without more, is insufficient to show pretext") (citing *Monaco v. Fuddruckers, Inc.*, 1 F.3d 658, 661 (7th Cir.1993)); *Hambas v. Board of Trustees, State Univ. of New York*, No. 93–6467, slip op. at 10 (W.D.N.Y. Nov. 7, 1996) (fact that younger candidates were chosen for position sought by plaintiff, without more, did not show that defendant's proffered reason for choosing them was pretextual), *aff'd*, 116 F.3d 465 (2d Cir.1997).

The only other evidence plaintiff has that his age was a factor is his allegation that defendant DeMauro was the decisionmaker with respect to some of the positions for which plaintiff had applied. Plaintiff alleges that DeMauro was plaintiff's manager from March 1993 until plaintiff's termination, and that he treated plaintiff poorly. For example, plaintiff alleges that DeMauro would "snub" plaintiff by not acknowledging him in the hallway, and that at one point plaintiff was moved out of his office into a cubicle, and that his office was given to a younger employee. He also alleges that he was told by a coworker that DeMauro once said that it did not make sense to train older employees, because the money would be better spent training younger employees.

This alleged remark, however, is utter hearsay, and plaintiff has not shown any basis for its admissibility. A party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment, absent a showing that admissible evidence will be available at trial." *Burlington Coat Factory Warehouse v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir.1985) (citations omitted). No such showing has been made.

▆▆ In addition, the remark concerning training was not made in connection with any decision about whether to rehire plaintiff. Proof of pretext cannot rest upon "statements by decisionmakers unrelated to the decisional process itself..." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring). "Unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of a discriminatory [decision]." *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686 (7th Cir.1991). Therefore, "[t]o be probative of discrimination, isolated comments must be contemporaneous with the [decision in question] or causally related to the ... decision making process." *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996). This single alleged remark, then, is not probative of whether Xerox's failure to rehire plaintiff was discriminatory.

In addition, it is evident from the record that even if DeMauro was involved in deciding whom to hire for some positions, many of these decisions regarding other positions were made by other managers. Plaintiff has proffered no evidence at all that any of those managers took plaintiff's age into account, or that they even knew how old he was when they reviewed his applications. In short, plaintiff has presented little more than a bald allegation that Xerox's refusal to rehire him was the result of age discrimination.

▆▆ I also note that, even if this claim were not dismissed on the merits, it would have to be dismissed as to DeMauro. Individuals cannot be held liable under the ADEA. *See Birkbeck v. Marvel Lighting*

Corp., 30 F.3d 507, 510 (4th Cir.), *cert. denied*, 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir.1993), *cert. denied*, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994); *Gregor v. Derwinski*, 911 F.Supp. 643, 655 (W.D.N.Y.1996).[3]

### III. Claim Relating to RIGP Benefits

 The complaint alleges that at the time of his termination, plaintiff was entitled to a supplement to his retirement benefits under the RIGP. Plaintiff states that Xerox deducted from his RIGP benefits an amount equal to the benefits he had received when he was previously terminated in 1983. Plaintiff alleges that this deduction was contrary to the terms of the RIGP as they had been represented to him, and that as a result, he is being deprived of $513 per month.

The complaint does not state the legal theory or basis for this claim. Defendants, however, contend that it is in effect a claim under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and that plaintiff is barred from bringing it at this time because he has not exhausted his administrative remedies as required in this circuit. *See Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 594 (2d Cir.1993). Defendants also contend that plaintiff has not sued the proper parties on this claim, because he must sue the plan itself.

Plaintiff's response does not take a clear position as to whether this is an ERISA claim or not. Plaintiff does, however, deny that the plan requires any exhaustion of administrative remedies prior to filing a lawsuit. Plaintiff also contends that "the plan is Xerox" itself, and that if the plan must be named as a defendant, plaintiff should be granted leave to amend to do so.

I find that this claim is governed by ERISA. It clearly is a claim for benefits under a retirement plan, and therefore it cannot be brought as a state-law claim for breach of contract, which is what it appears to be from the existing complaint. *See* 29

U.S.C. § 1144(a) (ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...."). Accordingly, this claim is governed by ERISA's procedural requirements, including exhaustion of administrative remedies. From the present record, however, it is unclear whether plaintiff has satisfied those requirements. Because of that fact, I will deny defendants' motion for summary judgment on this claim, but grant plaintiff leave to replead the claim as an ERISA claim.

 The Second Circuit "has recognized 'the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'" *Kennedy*, 989 F.2d at 594 (quoting *Alfarone v. Bernie Wolff Constr.*, 788 F.2d 76, 79 (2d Cir.)), *cert. denied*, 479 U.S. 915, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986). Exhaustion in an ERISA case requires whatever administrative appeals are provided for in the relevant plan or policy. *Id.*

In the case at bar, the plan states the following under the heading "Claims Denial and Appeal Procedures":

> If an application for benefits under a benefits plan governed by ERISA is denied, in whole or in part, you or your beneficiary will receive written notification. This notification will include the reason for the denial with reference to the specific plan provisions on which the denial was based, a description of any additional information needed to process the claim, and an explanation of the claim review procedure. Within 60 days after receiving the denial, if you wish to request reconsideration of your claim denial, you or your beneficiary must submit a written request for reconsideration of the application to the Plan Administrator at the address below.

Clemens Aff. Ex. E at 154. The plan then goes on to state the procedure to be followed if the plan participant does request reconsideration.

---

**3.** Although plaintiff in his brief appears to contend that DeMauro is only named in the HRL claim, the complaint itself describes the ADEA

cause of action as being brought "against defendants," and requests damages "against the Defendants." Complaint at 4 and ¶ 41.

The plan also states under the heading "Your Rights Under ERISA": "If you have a claim for covered plan benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court." *Id.* at 153. The plan does not expressly state whether the plan participant must first pursue any administrative procedures before commencing a lawsuit.

The record does not reveal precisely what steps plaintiff took to make a claim for the benefits at issue here. Plaintiff states in an affidavit that he "never received any letter denying [his] claim for benefits under the RIGP," Plaintiff's Aff., sworn to July 31, 1997 ¶ 121, but he does not state how he went about making a "claim." He states:

> Over a year after I was let go by Xerox, and after numerous demands for some sort of explanation, I finally received a letter from Xerox regarding RIGP. I was sent a calculation of my benefits and two pages, discussing benefits, with no indication from where they came, nor do they appear to be part of the plan attached by Xerox to its moving papers.

*Id.* ¶ 123.

Plaintiff has attached a copy of this letter (without the two documents that accompanied the original) to his affidavit. It is from Glenn A. Gardner, CSS Benefits Manager, and is dated April 24, 1995. The body of the letter states in pertinent part:

> As we discussed, enclosed please find two items:
>
> • A complete month-by-month breakout of your credited months of service.
>
> • A description of the Phantom Account concept taken from the Retirement Income Guarantee Plan Document.
>
> As you will recall, I described to you the Phantom Account and how it is applied to the RIGP calculation. I also committed to sending you the enclosed information. The projected RIGP calculation summary previously given to you is accurate and has appropriately calculated your account.

Plaintiff's Aff. Ex. U. Plaintiff states that this letter was "the only document [he] ever received" from Xerox regarding this matter. *Id.* ¶ 125.

This does not show exactly what sort of "claim" plaintiff made prior to commencing the case at bar. Plaintiff's statement that he made "numerous demands for some sort of explanation" might in fact indicate that he never made any actual claim for benefits, but simply asked for, and received, an explanation of how his benefits were calculated and why they were lower than he had expected them to be. If that is the case, then this cause of action may indeed be subject to dismissal for failure to exhaust administrative remedies.

As stated, however, the record as it now stands does not reveal whether plaintiff did make a claim or whether he took enough steps to satisfy the requirements of the plan. The absence of more specific allegations in this regard in the complaint may also be due to the fact that this cause of action was not originally pleaded as an ERISA claim. I believe that plaintiff should therefore be given leave to replead this cause of action as an ERISA claim, with all necessary supporting factual allegations.

In addition, defendants are correct that plaintiff has not named the proper parties on this claim. "In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir.1989); *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324–25 (9th Cir.1985) (per curiam). Upon repleading, therefore, plaintiff must name and serve the plan itself.[4]

## CONCLUSION

Defendants' motion for summary judgment (Item 10) is granted in part and denied in part. Defendants' motion for summary judgment on plaintiff's first and third causes of action is granted, and those causes of action

---

4. Plaintiff's cross-motion for summary judgment on the issue of defendants' liability does not state whether plaintiff seeks summary judgment on his claim for benefits as well as on his age discrimination claims. To the extent that plaintiff seeks summary judgment on this claim, his motion is denied.

are dismissed. Defendant's motion for summary judgment on plaintiff's second cause of action is denied. Plaintiff shall have thirty (30) days from the date of entry of this order to replead his second cause of action under ERISA, naming and timely serving the proper party defendant(s). Failure to do so may result in dismissal of this claim with prejudice.

Plaintiff's cross-motion for summary judgment on the issue of defendants' liability (Item 24) is denied.

Defendants' and plaintiff's motions to exclude expert testimony (Items 32 and 41 respectively) are denied as moot.

IT IS SO ORDERED.