Lenore **GAVIGAN**, Plaintiff,

v.

**CLARKSTOWN CENTRAL SCHOOL DISTRICT**, Defendant.

**No. 98 Civ. 7147(WCC).**

United States District Court, S.D. New York.

Feb. 28, 2000.

Law Offices of Bernard Weinreb, Suffern, NY, for plaintiff, Bernard Weinreb, of counsel.

Kaufman, Borgeest & Ryan, New York City, for defendant, Lee E. Berger, E. Tim McAuliffe, Jr., of counsel.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

This action arises under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 *et seq.*, and the New York Human Rights Law, N.Y. Exec. Law §§ 290–301. Plaintiff Lenore Gavigan, a New York State-certified school teacher, claims that defendant Clarkstown Central School District ("Clarkstown") refused to hire her on five separate occasions because of her age. Plaintiff seeks back pay, front pay, benefits and compensatory and consequential damages. Defendant

now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, claiming that: plaintiff's age was not a factor in the district's decision not to hire her; plaintiff's claims which arose prior to 1994 are time-barred; and Clarkstown is an instrumentality of the state, and thus immune to suit under the ADEA. For the reasons that follow, defendant's motion is denied.

## BACKGROUND

Plaintiff was born on August 17, 1946. She has a Bachelor of Arts degree from the College of Mt. Saint Vincent, a Master of Arts degree in teaching from Manhattanville College and doctoral credits from Fordham University. (Pl.Aff.¶ 2.)

In 1969, the New York State Education Department issued plaintiff an English Certificate permitting her to teach in public schools and she began her teaching career. In 1972, plaintiff became a substitute teacher for Clarkstown High School South. After a hiatus from teaching, which lasted several years, plaintiff resumed her career in 1979. Since then, she has taught basic, Regents and honors English classes and English as a Second Language ("ESL") classes. Plaintiff also has taught college-level courses. None of the positions plaintiff has held since 1979 were at Clarkstown. (Id. ¶ 3.)

Plaintiff states that in 1992, at age forty-six, she was interviewed by Clarkstown High School South Principal Gerald Bierker for a teaching position at Clarkstown. Plaintiff claims that a young, inexperienced teacher got the job instead of her. (Pl. Dep. at 49–50.) Plaintiff interviewed for two other positions within Clarkstown in 1992, one as an eighth-grade English teacher and another as an ESL teacher. Plaintiff was not hired for either position. (Id. at 54–56.) Plaintiff claims that the jobs went to teachers under the age of thirty, an assertion that defendant does not refute.

In August 1993, plaintiff again was interviewed for a position within Clarkstown as an eighth-grade English teacher. Plaintiff states that during the job interview she told her interviewer, "If my age is going to be a factor here, let us not go through the whole process." (Id. at 63.) Plaintiff claims that a younger, more inexperienced teacher got the job. (Id. at 65.)

Plaintiff states that she thereafter went to Bierker's office to speak with him. Plaintiff claims that at this meeting: "[Bierker] closed the door. He said this is completely off the record, and I will never admit to it. I don't want to see you beat your head against a wall anymore. Your age is the absolute factor here. They will not hire anyone of your age." (Id. at 68.)

In August 1994, after being contacted by Martha McClurken (now Ryan), supervisor of special programs at Clarkstown, plaintiff applied for a position with Clarkstown as an ESL teacher. (Id. at 74.) Plaintiff went on an initial interview with Ryan. During that interview, plaintiff discussed her perception that Clarkstown did not hire older or experienced teachers. Ryan states that she told plaintiff that she "did not believe that to be true" and that she "thought that experience was a positive in someone's favor." (Ryan Dep. at 16.)

Plaintiff then interviewed with Ryan and approximately three Clarkstown principals. Ryan states that plaintiff told them during the interview "that she was surprised that the District was still using some teaching assistants and was out of compliance [with state regulations] in that we tended to have more teaching assistants than certified teachers in the program at that time." (Id. at 17.) Ryan states that following the interview, she felt "concern that a candidate, in an interview situation, would challenge the District and its procedures." (Id.)

Plaintiff claims that when asked what her aims for the ESL program would be, she told the interviewers that if she were hired, one of her goals would be to bring the program into compliance with state regulations. (Pl. Dep. at 79.)

Ryan admits that the district was not in compliance with state regulations, but states that she took plaintiff's statement as "somewhat of a judgment." (Ryan Dep. at 18.) Ryan states in her deposition that plaintiff:

came across as a much—with a much stronger personality than certainly [the successful candidate] did. And I think there were some concerns and there were some discussions after the interview that some of Lenore's statements— and again, the only statement that I remember specifically, which was the one questioning the compliance with the District, you know, was a little bit strong and a little bit negative. And, you know, might be a potential concern.

(*Id.* at 25.)

Ryan states that the successful candidate had one year of experience and was certified in elementary education as well as in ESL. Plaintiff had one year of ESL teaching experience at the time of the interview. (*Id.* at 21.) Ryan also states that the applicant Clarkstown hired "really had the interpersonal skills to be well-received and accepted by classroom teachers and would kind of have the finesse to work successfully with those teachers." (*Id.* at 22.)

Francine Cuccia, the principal of Link Elementary School and one of plaintiff's interviewers, states in an affidavit that "Mrs. Gavigan was not hired because another candidate was better suited to the position." (Cuccia Aff. ¶ 2.) Cuccia states: "My consideration of Mrs. Gavigan's candidacy was in no way influenced by her age. I have hired teachers of a similar or older age in the past." (*Id.* at ¶ 3.) Carol Pilla, principal of Laurel Plains Elementary School and another of the interviewers, states: "Mrs. Gavigan was not hired because another candidate demonstrated a personality and temperament better suited to the position. My consideration of Mrs. Gavigan's candidacy was in no way influenced by her age." (Pilla Aff. ¶¶ 2, 3.)

Plaintiff claims that she worked in the Middletown School District with the successful applicant and that the successful applicant left her teaching position there in violation of a thirty-day notice requirement. (Pl.Aff.¶ 9.) Ryan testified during her deposition that she could not remember whether she had checked the successful applicant's references. (Ryan Dep. at 20.) Plaintiff alleges that the successful applicant was twenty-four years old. (Compl.¶ 35.)

Plaintiff was advised by letter dated August 11, 1994 that she did not get the position. (Pl. Dep. at 81.) On October 14, 1994, plaintiff filed a charge of age discrimination with the New York State Division of Human Rights and with the Equal Employment Opportunities Commission (the "EEOC").

## DISCUSSION

### I. *Summary Judgment Standard*

A district court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is. improper." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir.1995). The party seeking summary judgment has the burden of showing that no genuine factual dispute exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## II. *The 300–Day Limitation*

■ As a threshold matter, defendant contends that plaintiff's allegations of discrimination which arose prior to 1994 are time-barred. In New York, an EEOC charge of age discrimination must be filed before the earlier of "300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law." 29 U.S.C. § 626(d). Defendant urges that although plaintiff's claim as to the 1994 instance is timely, her claims as to the 1992 and 1993 instances are time-barred, as these actions took place much earlier than the 300–day time limit.

■ However, plaintiff argues that these earlier alleged acts of discrimination are actionable pursuant to the continuing violation doctrine. Under this doctrine, "a timely charge with respect to any incident of discrimination in furtherance of a policy of discrimination renders claims against other discriminatory actions taken pursuant to that policy timely, even if they would be untimely if standing alone." *Connecticut Light & Power Co. v. Secretary of the U.S. Dep't of Labor*, 85 F.3d 89, 96 (2d Cir.1996). The fact that plaintiff has alleged five distinct acts of discrimination does not, in and of itself, establish a continuing violation. *See Wingfield v. United Tech. Corp.*, 678 F.Supp. 973, 979 (D.Conn.1988). Rather, "[a] continuing violation exists where there is a relationship between a series of discriminatory actions and an invalid, underlying policy." *Connecticut Light & Power*, 85 F.3d at 96. Isolated acts of discrimination do not constitute a continuing violation where the acts were not in furtherance of a policy of discrimination. *See Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 274 (2d Cir.1981), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982). To take advantage of the continuing violation doctrine, plaintiff must prove: (1) an underlying discriminatory policy or

practice; and (2) an action taken pursuant to that policy during the statutory period preceding the filing of the complaint. *Id.*

■ Although the Second Circuit has not passed on its applicability within this circuit, several of the lower courts have adopted a three-factor test articulated by the Fifth Circuit in *Berry v. Board of Supervisors of La. State Univ.*, 715 F.2d 971 (5th Cir.1983) to aid in the analysis. *See Petrosky v. New York State Dep't of Motor Vehicles*, 72 F.Supp.2d 39, 49 (N.D.N.Y.1999) (listing cases). The *Berry* test sets forth the following factors: (1) whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation; (2) whether the acts are recurring or isolated incidents; and (3) whether the act has a degree of permanence which should trigger an employee's awareness of and duty to assert her rights; or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate. *Id.*

As to the first factor, plaintiff alleges that she was denied a position in Clarkstown pursuant to a policy of age discrimination, pointing to her five failed attempts at employment within the district and her allegations that in each instance, a younger, less-experienced teacher got the job. In further support of this assertion, plaintiff offers affidavits from three teachers who claim that they were denied employment in Clarkstown based on their age.

Louise Schreier claims that she was offered a position within Clarkstown at age thirty-nine, but declined the offer. Three years later, Schreier states, she attempted to gain a position within the district, and was informed that because she had two grades of "D" on her undergraduate transcript, she was eliminated from consideration, despite the fact she had a 3.5 grade point average in her Master's program.

Another candidate for a position in Clarkstown, Joann Sgarlata, states that

she applied for the job at age forty-nine, two years after receiving her Masters in Education degree with a 4.0 grade point average. Sgarlata claims that "[a]s soon as the principal saw me, I felt that she was not interested in pursuing the interview. Needless to say, I was not hired." (Sgarlata Aff. ¶ 4.)

Another applicant, Mary Martin, claims that she applied for a job in Clarkstown as a special education teacher in 1995 at the age of fifty-two. Martin states that she had one year of special education experience as well as a Master's Degree in special education. Following an interview with the director of education, Martin states that she never heard from the district again.

As to the second factor, plaintiff here alleges what might be construed as isolated incidents. However, plaintiff also claims that a Clarkstown principal told her, "Your age is the absolute factor here. They will not hire anyone of your age." (Pl. Dep. at 68.) This allegation could lead a reasonable juror to find that Clarkstown's repeated rejections of plaintiff were not isolated incidents, but rather actions that stemmed, at least in part, from a policy of age discrimination.

The third factor, which focuses on whether the act has a degree of permanence which should have prompted plaintiff to come forward to press her claims earlier, could be decided in plaintiff's favor when the evidence is considered, as it must be, in the light most favorable to plaintiff. From plaintiff's testimony, she did not begin to question the District's motives in failing to hire her for the three positions to which she applied in 1992 until the following year, after she discovered that the positions all went to teachers under the age of thirty, and that two of the three teachers hired were under the age of twenty-five. (*See* Pl.Dep. at 57–59.) In August 1993, plaintiff pressed the issue of her age during her interview for an eighth-grade English position. When she failed to get that job, plaintiff interviewed almost im-

mediately for another position as an English teacher. When she again failed to get the job, plaintiff discussed her situation with Clarkstown High School South Principal Bierker, who, plaintiff alleges, told her that her age was the determinative factor in her failure to get a job. At this point, plaintiff could have pressed her claim in court. However, a jury could find that plaintiff's failure to act sooner was based on optimism, faith in the integrity of the hiring process, or a strong desire to work for Clarkstown.

In light of the above, we find that Plaintiff has offered sufficient evidence to raise a material issue of fact as to whether Clarkstown's failure to hire plaintiff was pursuant to a discriminatory policy.

### III. *Plaintiff's ADEA Claim*

■ The ADEA makes it unlawful for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA covers the class of employees over the age of forty. *See* 29 U.S.C. § 631(a). The requirements of proof of age discrimination are the same as that for proving discrimination under Title VII. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d Cir.1997). The elements of an employment discrimination claim are "virtually identical" under the New York Executive Law and Title VII. *Lacoparra v. Pergament Home Centers, Inc.*, 982 F.Supp. 213, 225 (S.D.N.Y.1997). Therefore, our analysis of plaintiff's ADEA claim is equally applicable to plaintiff's state law claim.

■ A claim for employment discrimination is governed by the three-step burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this analysis, the plaintiff must first establish a prima facie case of discrimination. If the plaintiff makes out a prima facie case, a presumption that the employer un-

lawfully discriminated against the plaintiff is raised and the burden of production then shifts to the employer to "articulate a legitimate, clear, specific and non-discriminatory reason" for failing to hire the plaintiff. *Quaratino,* 71 F.3d at 64. If the employer does so, the presumption of discrimination drops out and the plaintiff has the burden of proof by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Plaintiff must establish "both that the reason was false, and that discrimination was the real reason." *Id.*

### A. *Plaintiff's Prima Facie Case*

■■ To establish a prima facie case of age discrimination, plaintiff must show that: (1) she was within the protected age group; (2) she was qualified for the job; (3) she suffered from an adverse employment decision; and (4) the employment decision occurred under circumstances giving rise to an inference of age discrimination. *See Hollander v. American Cyanamid Co.,* 172 F.3d 192, 199 (2d Cir.1999). The burden to establish a prima facie case is *de minimis. See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir. 1994).

■ Here, plaintiff has met her burden of establishing a prima facie case of age discrimination. First, plaintiff was forty-six years old the first time she was rejected by Clarkstown and forty-eight years old when she was not hired for the ESL position to which she applied in 1994, placing her within the protected class. Defendant does not dispute that plaintiff was qualified for the position. Plaintiff was ESL-certified and had one year of experience teaching ESL. She holds a Master of Arts in teaching degree and doctoral credits from Fordham University. Plaintiff also has satisfied the third element, having suffered from an adverse employment decision, the district's decision not to hire her. Furthermore, plaintiff has introduced evidence that this decision occurred under circumstances giving rise to an inference of discrimination. As discussed above, plaintiff states that one Clarkstown principal told her that her age was "the absolute factor" in Clarkstown's decision not to hire her. Plaintiff has pointed to five separate occasions on which she was denied employment despite her experience and qualifications and a younger, less experienced teacher, was hired. Accordingly, plaintiff has met her burden of establishing a prima facie case.

### B. *Defendant's Reasons for Failing to Hire Plaintiff*

■ Once a plaintiff has made out a prima facie case of discrimination, the burden of going forward shifts to the employer to articulate a legitimate, non-discriminatory reason for failing to hire the applicant. *Quaratino,* 71 F.3d at 64. Defendant states that the decision not to hire plaintiff for the ESL position in 1994 was "simply because one of the other candidates was better suited for the position." (Def. Reply Mem.Supp.Summ.J. at 3.) Defendant states that the successful candidate:

> was certified in ESL and elementary education; she had worked previously in a District that provided good staff development training; she had a 'good knowledge of whole language and some of the kinds of literacy methods' used by defendant Clarkstown; she had the 'interpersonal skills to be well-received and accepted by the classroom teachers and would kind of have the finesse to work successfully with those teachers;' she was mature and articulate for only having had one year of ESL experience; she had a manner and demeanor that was commensurate with a position necessitating close contact with children whose first language was not English.

(*Id.* at 3–4, citing Ryan Dep. at 19–22, 24.)

Defendant states that, in contrast, "plaintiff presented a demeanor during her

interview that her interviewers did not feel was commensurate with the requirements of the position." (Def. Reply Mem.Supp. Summ.J. at 4.) As discussed above, Clarkstown's supervisor of special programs, Martha Ryan, stated that during plaintiff's interview plaintiff:

> came across as a much—with a much stronger personality than certainly [the successful candidate] did. And I think there were some concerns and there were some discussions after the interview that some of Lenore's statements—and again, the only statement that I remember specifically, which was the one questioning the compliance with the District, you know, was a little bit strong and a little bit negative. And, you know, might be a potential concern.

(Ryan Dep. at 25.)

Defendant has articulated a legitimate, non-discriminatory reason for its failure to hire plaintiff. "In the context of an allegation of a discriminatory refusal to hire, an unsuccessful performance at a job interview, wherein the applicant fails to convince the prospective employer that he or she is capable of handling the responsibilities of the job, is a legitimate, non-discriminatory reason...." *Wechsler v. RD Management Corp.*, 861 F.Supp. 1153, 1160 (E.D.N.Y.1994). Here, defendant's claim that plaintiff, during her interview, appeared to lack certain interpersonal skills required for the position, and that the successful applicant had these skills, is enough to rebut plaintiff's prima facie case.

### C. *Evidence of Pretext*

Although it is not the role of the courts to second guess an employer's business judgment exercised in good faith, "plaintiff must be allowed to show that her employer's asserted reasons for discharging her were a pretext." *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1226 (2d Cir.1994). Plaintiff must make this showing by a preponderance of the evidence. *de la Cruz v. New York City Human Resources Admin.*

*Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996).

In an employment discrimination case, a plaintiff must show that there is a material issue of fact as to whether: (1) the employer's asserted reason for the failure to hire is false or unworthy of belief; and (2) more likely than not the applicant's age was the real reason for the employer's decision. *See Bucknell v. Refined Sugars, Inc.*, 82 F.Supp.2d. 151 (S.D.N.Y. 2000). "Pretext may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, ... or by reliance on the evidence comprising the prima facie case, without more." *Chambers*, 43 F.3d at 38 (internal quotations and citations omitted).

When viewed in the light most favorable to her, plaintiff's evidence is sufficient to withstand a motion for summary judgment. In making this determination, we are mindful of the Second Circuit's instruction that "[a] trial court must be cautious about granting summary judgment to an employer when ... its intent is at issue." *Gallo*, 22 F.3d at 1224.

Plaintiff states that after she was notified that the position went to someone else, she telephoned Ryan to ask for "feedback" and Ryan told her "that the person that was hired was highly qualified, highly experienced, and that it was a very tough choice between the two of us." (Pl.Dep. at 82.) Plaintiff has offered evidence that the successful applicant had only one year of teaching experience. Ryan states in her deposition that "Lenore [Gavigan's] experience in ESL was one year, which was, you know, close to, if not the same as, [the successful applicant's]." (Ryan Dep. at 26.) Defendant now states that plaintiff's experience was not at issue, but rather, her demeanor.

Plaintiff claims, and defendant does not contest, that each of the five times she interviewed for a position with Clarkstown, the position went to a teacher age thirty or

younger. Plaintiff also claims that each time she applied for a position, she agreed to begin at an entry-level position. Plaintiff has offered the affidavits of three other women who claim that they were qualified for the positions to which they applied, but were not hired because of their age.

In addition, plaintiff claims that a Clarkstown principal told her that she would not be hired by the district because of her age. Defendant argues that the principal's statement is irrelevant because the principal was not a "final decision-maker." (Def. Reply Mem.Supp.Summ.J. at 4–5.) However, Ryan states in her deposition that "once the principal approves of the candidate … they're then brought to [the superintendent of pupil services], and he does the final interview; but generally, in practice, he has approved anyone who has gotten that far." (Ryan Dep. at 9.)

For the reasons stated above, plaintiff has raised a material issue of fact as to whether's defendant's failure to hire her was motivated by discriminatory intent. Accordingly, defendant's motion for summary judgment on grounds plaintiff failed to demonstrate the requisite showing of pretext is denied.

### IV. *Kimel Is Inapplicable to the Instant Case*

■ Defendant argues that plaintiff's ADEA claim must be dismissed on the basis of the Supreme Court's recent decision in *Kimel v. Florida Board of Regents*, —— U.S. ——, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), which held that the ADEA did not validly abrogate the states' Eleventh Amendment immunity from suit by private individuals. The Eleventh Amendment "affirms the fundamental principle that sovereign immunity limits the grant of jurisdictional authority contained in Article III of the constitution." *Fay v. South Colonie Cent. Sch. Dist.*, 802 F.2d 21 (2d Cir.1986). This jurisdictional bar operates when the state is the real party in interest. *Id.* Ordinarily, the state is the real party in

interest when payment of a judgment would come from the state treasury. *Id.*

Defendant claims that Clarkstown, "a public central school district, created, organized, and governed pursuant to New York Education Law §§ 1808–1809" is a "state instrumentality" to which the ADEA, in light of *Kimel*, does not apply. Defendant's argument is unavailing.

The Second Circuit has held that a New York central school district is not immune from suit. *Fay*, 802 F.2d at 27. *See also Fabrizio & Martin, Inc. v. Board of Educ. Cent. Sch. Dist. No. 2 of the Towns of Bedford et al.*, 290 F.Supp. 945 (S.D.N.Y. 1968). There, the Second Circuit explicitly rejected the argument defendant now puts forth, stating that "being a steward of state education policy does not make the school district an alter ego of the state." *Id.* The Supreme Court also has recognized that school districts which have the power to issue bonds and to levy taxes may be more like a political subdivision such as a county or city than a state, and thus not protected by Eleventh Amendment immunity from suit despite receiving a significant amount of money from the state. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280–81, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). Accordingly, Clarkstown does not share in the state's Eleventh Amendment immunity and the Supreme Court's holding in *Kimel* is inapplicable to the instant case.

### CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is denied.

SO ORDERED.