**Robert RICHANE, Plaintiff,**

v.

**FAIRPORT CENTRAL SCHOOL DISTRICT, Defendant.**

No. 99–CV–6301L.

United States District Court, W.D. New York.

Sept. 28, 2001.

Ronit Zusman, Brown & Hutchinson, Rochester, NY, for Plaintiff.

Robert T. DiGuilio, Osborn, Reed, Burke and Tobin LLP, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

### Procedural Background

Plaintiff Robert Richane ("Richane") instituted this action against defendant Fairport Central School District ("Fairport"), alleging that Fairport's failure to hire him as a teacher constitutes age discrimination against him in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 ("ADEA"), and the New York State Human Rights Law, N.Y. Exec. Law Article 15, § 296 *et seq.* ("HRL"). Currently before the Court, is Fairport's motion, under FED. R. CIV. P. 56, for summary judgment. For the rea-

sons that follow, Fairport's motion is granted.[1]

## Factual Background

Richane applied for a full-time social studies teaching position in the Fairport High School in June 1996. At that time, three such positions were available (one full-time and two contract positions for a term of one year each).

Fairport's hiring practice involved the following steps: application by candidate, review by the principal and lead teacher of the application and employment records on file, invitation to an interview before a "building committee" which consisted of Fairport personnel, building committee interview of the candidates invited, building committee's transmittal of names of finalists to district office, district level interview, and notification of results by district interviewer.

The building committee, which interviewed plaintiff and 12 to 14 other candidates, was composed of David Paddock, principal of Fairport High School, Trudy Mantle, lead social studies teacher, Robert Dill, social studies teacher, and James Nowak, social studies teacher. All of these individuals were over 40 on July 1, 1996. Of the 12 to 14 original candidates who were interviewed by the building committee, only six candidates were called for a second interview. The names of those individuals (as well as their respective ages on July 1, 1996) are: Wayne Ackles (28), Michelle Avila (22), Christian Battaglia (36), John Davis (32), Helene Newman (41), and plaintiff (52). These individuals were considered finalists for the available positions.[2]

The six finalists chosen by the building committee were then invited to a second interview before Dr. Margaret Keller–Cogan ("Keller–Cogan"), Assistant Superintendent for Curriculum and Instruction at the Fairport Central School District. At the time she interviewed each of the finalists, Keller–Cogan was 41. The three successful applicants for the three available full-time positions were Ackles, Avila, and Davis. The three oldest applicants, Battaglia, Newman, and plaintiff were not offered a position. On July 3, 1996, plaintiff was informed that he would not be offered a position.

On July 8, 1996, plaintiff wrote Keller–Cogan. Ex. Q. to Dkt. # 18. In that letter, plaintiff acknowledged that "there were other candidates with excellent qualifications." *Id.* Nowhere in the letter did plaintiff complain that he was not offered a position because of his age. Instead, he merely stated that his concern was that Keller–Cogan's "judgment was based on superficial impressions" and that he was "puzzled" by the result. *Id.*

On April 28, 1997, Richane filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"), in which he claimed that Fairport discriminated against him when it failed to hire him in 1996. On March 18, 1999, the EEOC issued a determination that there was a reasonable basis to believe that plaintiff was not hired for the positions for which he applied because of his age. The EEOC issued its right to sue

---

**1.** Defendant also moves, pursuant to FED. R. CIV. P. 56(e), to strike plaintiff's responding affidavit in its entirety, or in the alternative, to strike those portions which contain conclusory statements, legal conclusions, or statements of which plaintiff lacks personal knowledge (Dkt.# 21). Because defendant's motion for summary judgment is granted, I need not reach its motion to strike.

**2.** Subsequent to the initial interview process, a temporary, part-time position became available. The individual offered that position was not interviewed by Keller–Cogan.

letter on April 20, 1999. This action followed.

## DISCUSSION

Defendant now moves, under FED. R. CIV. P. 56, for summary judgment, asserting that plaintiff's complaint should be dismissed in its entirety because there is no evidence of age discrimination in violation of either the ADEA or the HRL.

### A. Summary Judgment—General Standards

The standard for deciding summary judgment motions is well established. Rule 56(c) provides that a motion for summary judgment shall be granted if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Under the rule, the burden of demonstrating the absence of any genuine issue of material fact rests on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. 1348 (emphasis in original) (quoting Fed.R.Civ.P. 56(e)).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348. When perusing the record to determine whether a rational fact-finder could find for the non-moving party, however, all reasonable inferences must be drawn in favor of the non-moving party. *See Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988).

 The general principles underlying a motion for summary judgment fully apply to discrimination actions. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases"). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Association of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to ... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion).

 Consequently, once the moving party has met its burden, the non-moving party in a discrimination action must come forward with evidence upon which a rational fact-finder could return a verdict in his favor. *See Ellenbogen v. Projection Video Services, Inc.*, 99–CV–11046, 2001 WL 736774 (S.D.N.Y. June 29, 2001) (in responding to summary judgment motion, plaintiff alleging discrimination is not absolved "from the responsibility of producing sufficient evidence from which a reasonable juror could return a verdict in his favor"). For a plaintiff in a discrimination case to survive a motion for summary

judgment, he or she must do more than present "conclusory allegations of discrimination," *Meiri v. Dacon,* 759 F.2d 989 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); he or she must offer "concrete particulars" to substantiate the claim. *Id.* (cited in *Duprey v. Prudential Ins. Co.,* 910 F.Supp. 879 (N.D.N.Y. 1996)).

## B. The Age Discrimination Claim

◼ Courts analyze ADEA claims under the same framework as claims brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq. Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir.2000).[3] That framework involves the familiar burden-shifting analysis developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). First, a plaintiff must establish a *prima facie* case of age discrimination. *Schnabel,* 232 F.3d at 87. Once plaintiff has made out a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory business rationale for its actions. If the employer articulates such a reason, the burden shifts back to the plaintiff to prove that the employer's stated reasons are merely pretextual and that age discrimination was the true reason for the adverse employment action. *Abdu-Brisson,* 239 F.3d at 466; *see also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

At argument, the parties agreed that plaintiff had made out a *prima facie* case and that defendant, in turn, had satisfied its burden of articulating a legitimate non-discriminatory reason for not hiring plaintiff, *i.e.,* that other candidates were more qualified for the available positions in Keller–Cogan's opinion, and that plaintiff performed poorly at the interview and failed to demonstrate his ability and willingness to implement in the classroom strategies to motivate a variety of learners and engage students. The parties also conceded that plaintiff's allegations of discrimination were based solely upon Keller–Cogan's actions, and not upon the actions of anyone else.

Therefore, the instant motion turns on the narrow issue of whether plaintiff has come forward with sufficient evidence that Fairport's proffered explanations were merely pretextual and that its actual motivations more likely than not were discriminatory. *See St. Mary's Honor Ctr.,* 509 U.S. at 510–511, 113 S.Ct. 2742; *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000). In the summary judgment context, this means that plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for not hiring him is false and as to whether plaintiff can satisfy his ultimate burden of persuading the trier of fact that Fairport intentionally discriminated against him based upon his age. A unanimous Supreme Court clarified a plaintiff's burden of showing pretext in *Reeves,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105, and the Second Circuit recently applied *Reeves* in the summary judgment context. *See Schnabel,* 232 F.3d at 89 (determining that *Reeves* applies in evaluating a motion for summary judgment, and holding that

---

3. Age discrimination suits brought under the HRL are subject to the same analysis as

claims brought under the ADEA and Title VII. *See Abdu–Brisson,* 239 F.3d at 466.

"*Reeves* in no way relaxed the requirement that plaintiffs make a showing that the defendant's proffered explanations were pretextual").

*Plaintiffs' Evidence that Defendant's Reasons are False*

 Plaintiff presents little, if any, independent evidence supporting the inference that Fairport's stated reasons for not hiring him are pretextual. In fact, plaintiff has submitted no affidavits in opposition to the motion other than his own, and that of his attorney. Although he submits numerous deposition transcripts and certain documents, I do not find that he has cited any specific testimony or furnished any documents which raise a genuine question of fact regarding the truth of defendant's reasons. As the Second Circuit has made clear, in a case where a plaintiff does not credibly call into question an employer's non-discriminatory explanation for its motives, summary judgment for the defendant continues to be appropriate. *See Schnabel*, 232 F.3d at 90.

 Plaintiff relies heavily on the fact that out of a field of six candidates the three youngest applicants were hired for the available full-time positions, and that plaintiff was the oldest applicant. Although this evidence is sufficient to sustain Richane's *de minimis* burden of establishing a *prima facie* case, it does not call into question Fairport's asserted non-discriminatory reason that it did not deem him the best candidate for the positions available. *See Abdu–Brisson*, 239 F.3d at 467; *Weinstock*, 224 F.3d at 50. The fact that younger candidates were offered the position is not enough to defeat a well-founded motion for summary judgment. *See Coleman v. Prudential Relocation*, 975 F.Supp. 234, 247 (W.D.N.Y.1997)("losing out to a younger candidate, without more, is insufficient to show pretext") (citing *Monaco v. Fuddruckers, Inc.*, 1 F.3d 658, 661 (7th Cir.

1993)); *Hambas v. Board of Trustees, State Univ. of New York*, No. 93–6467, slip op. at 10 (W.D.N.Y. Nov. 7, 1996) (fact that younger candidates were chosen for position sought by plaintiff, without more, did not show that defendant's proffered reason for choosing them was pretextual), *aff'd*, 116 F.3d 465 (2d Cir.1997).

 Aside from the fact that the successful candidates were younger than plaintiff, plaintiff relies on his own belief that he was the most highly qualified applicant for the position. He contends that his age must have been the reason he was not offered a position because he was "clearly the most appropriate person to fill one of the social studies teaching positions" (Complaint, ¶ 26), and that in certain respects he was "stellar" and "over qualified." Dkt. # 19, p. 8. However, an employee's subjective opinion about his qualifications is insufficient to give rise to a triable issue of fact concerning whether the employer's proffered reason for its actions is a pretext for discrimination, and that is particularly true where the employer's decision whether to hire plaintiff did not depend simply on whether he was qualified, but on whether he was the best candidate for the job. *Layaou v. Xerox Corp.*, 999 F.Supp. 426, 433 (W.D.N.Y. 1998); *see also Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 130 (2d Cir.1996) (promotion case) (plaintiff cannot show pretext simply "by asserting her personal belief that she was the most qualified person for the various positions"); *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1039 (10th Cir.1993) (employee's own assessment of his job performance is inadequate to raise issue of fact for trial); *Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) ("The fact that an employee disagrees with an employer's evaluation of him does not prove pretext"), overruled in part on other grounds by *St. Mary's Hon-*

*or Center,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407.

Notwithstanding plaintiff's personal opinion concerning his credentials, it is undisputed that two of the successful candidates had masters degrees, although, plaintiff, on the other hand, had not yet obtained a masters degree when he interviewed with Keller–Cogan. Indeed, Richane was one of only two finalists who did not yet have such a graduate degree. There is also evidence that three candidates—Ackles, Battaglia, and Newman—had experience as permanent social studies teachers and their experience was much more recent than Richane's. In stark contrast, Richane had not held a full-time teaching position since 1971, 25 years prior to his 1996 application, and his only teaching experience from 1992 to 1996 was as a substitute teacher. Richane had only recently received his provisional teacher recertification in 1993.

The evidence also establishes that Richane did not demonstrate a proficiency in the learner-based teaching methodology endorsed by the New York State Department of Education. Summarizing her interview with Richane, Keller–Cogan asserts that:

> Richane did not communicate an understanding of or experience using current instructional and assessment practices. Furthermore, his portrayal of his classroom environment was focused more on social studies content and less on the learners, their instructional needs and the strategies he has used or would used to motivate a diverse learning population.

Memorandum from Dr. Keller–Cogan, Ex. P to Dkt. # 18.

Fairport cites this gap in Richane's experience as one of the determinative factors behind the decision not to hire him. The testimony of Fairport personnel corroborates Fairport's assertion that it hoped to integrate that teaching style, a style unfamiliar to plaintiff, into its curriculum. Familiarity with this system was important to Keller–Cogan, and there is no reason she could not base her final decision on this criteria. The fact that she did not alert applicants in advance of their interview with the factors that she deemed to be important is of no moment. There is no requirement that interviewers provide that kind of advance information.

In contrast to plaintiff, Keller–Cogan was impressed with Avila's performance at her interview, and the portfolio Avila presented. Avila satisfied Keller–Cogan that she was trained in the learner-based pedagogy that Fairport sought. Therefore, although Avila was a new teacher whose experience was limited to periods as a practice teacher at Fairport, she was by no means so demonstrably less qualified than Richane that a jury could infer that passing over Richane was based on discrimination.

Richane, however, rejects this argument, and he instead maintains that the only posted requirement for the position was a New York State certification in social studies in grades 7 through 12, and that he had such a certification.[4] From this, it appears to be Richane's position that Keller–Cogan should not have measured applicants by their proficiency in the new learner-based pedagogy because she did not post that skill as part of the job requirements, and never communicated this to the building committee. That is beside the point, however. In almost any situation involving a job opening, the job

---

**4.** What plaintiff selectively ignores, however, is the fact that all of the finalists referred to Keller–Cogan for a second interview met the minimal certification requirements.

requirements simply establish a minimum standard in order to separate the qualified candidates from the unqualified ones. Employers will generally look at factors beyond those requirements as a means of assessing which of the qualified candidates are the *most* qualified. Thus, it was certainly not unreasonable for Keller–Cogan to view the proficiency of the other finalists in the learner-based pedagogy as an asset.

■ In any event, whether plaintiff considers himself to have been the better candidate, or even whether he *was* the better candidate, is not the issue. What matters is why Fairport did what it did, not whether it was wise to do so. The ADEA prohibits discrimination, not poor judgment. *See Gumbs v. Hall,* 51 F. Supp.2d 275, 282 (W.D.N.Y.1999); *see also Montana v. First Fed. Savings and Loan Ass'n of Rochester,* 869 F.2d 100, 106 (2d Cir.1989) (federal courts do not have a "roving commission to review business judgments") (quoting *Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13, 21 n. 8 (7th Cir.1987)); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1116 (2d Cir. 1988) ("[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons"); *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.1985) (courts "must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process"), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985); *Mesnick v. General Electric Co.,* 950 F.2d 816, 825 (1st Cir.) ("[c]ourts may

not sit as super personnel departments, assessing the merits—or even the rationality—of employers' non-discriminatory business decisions"), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Graefenhain,* 827 F.2d at 20 ("A business decision need not be good or even wise. It simply has to be nondiscriminatory . . ."). Employers should be free to choose the person that they honestly (even if erroneously) consider the better-qualified candidate without being subjected to liability merely because the candidates are of a different age.

■ Plaintiff also suggests that Keller–Cogan's stated reliance on the learner-based pedagogy was fabricated by Fairport after Richane filed his charge of discrimination.[5] The fact that Keller–Cogan did not memorialize the rationale for her hiring decision until after the charge was filed does not make it automatically suspect. The evidence before me on this issue consists of Keller–Cogan's affidavit, her deposition testimony, and her May 17, 1997 memorandum. Throughout, she has consistently maintained that Richane was not as familiar with and dedicated to the learner-based teaching methodology as she wished. Even plaintiff appears to admit that he did not demonstrate proficiency in the new learner-based pedagogy at the interview. Plaintiff has offered no concrete evidence to call this into question; rather, his theory is based merely on speculation and conjecture, which is insufficient at this stage when discovery is complete and a summary judgment motion is pending. With respect to plaintiff's argument

---

**5.** Plaintiff cites *Gavigan v. Clarkstown Central School Dist.,* 84 F.Supp.2d 540 (S.D.N.Y. 2000), calling it "a remarkably similar case to the one herein." Dkt. # 19, p. 11. I find the facts presented in *Gavigan,* however, to be distinguishable from those presented here. In *Gavigan,* unlike this case, plaintiff came

forward with direct evidence of discrimination with respect to her claim that defendant repeatedly failed to hire her. Indeed, there was testimony in that case that the principal of the school where the plaintiff applied for a position said that plaintiff would not be hired because of her age.

that Fairport failed to issue contemporaneous notes reflecting the basis for Keller–Cogan's decision not to hire him, it is not unreasonable that a busy administrator would feel no need to articulate his or her reasons for a business decision until the decision was challenged in some manner. None of these unsupported theories raise a genuine issue that Fairport's reason was false.

This is simply a case of a person who, after interviewing along with many other teachers in a competitive school district, disagrees with the reasons articulated for his rejection. Plaintiff cannot point to anything specifically in the record that indicates that Fairport's stated reasons were a ruse. In fact, plaintiff concedes that there were no overt written or oral statements relating to age at any part of the interview process. Dkt. # 19, p. 20. In addition, he does not contend that Keller–Cogan engaged in any prior discriminatory acts against him or anyone else for that matter. Indeed, when plaintiff himself wrote a letter complaining that he was not hired several days after the decision was announced, he never mentioned age discrimination as being a factor. The first sign of this came when he filed his EEOC charge over nine months after the decision was made. Nor has he offered proof of any district-wide discrimination against school district applicants on the basis of age. To the contrary, the record establishes that in 1996, 393 of its teachers were 40 years of age or over and only 133 of its teachers were under 40 years of age. Dkt. # 14, Ex. Q, McElheran Aff., ¶ 9.

The plain reality here is that the decision not to hire plaintiff stemmed from Keller–Cogan's perception that Richane was less qualified that the other successful applicants for the three available positions. In part, that decision was based on plaintiff's interview which did not go as well as

that of others. Even plaintiff seems to acknowledge the weakness of his interview. He admitted that he did not prepare for the interview by obtaining information about Keller–Cogan (*see* Richane Dep., p. 48); it appears that he thought the second interview was merely a formality because he felt very confident after the first interview and he admits not describing his qualifications for Keller–Cogan during the interview (*see* Richane Dep., p. 47; *see also* Ex. Q to Dkt. # 18 [plaintiff states that he did not deem it "necessary or even appropriate" to describe his qualifications to Keller–Cogan]). His poor performance at the interview was reason alone to select other candidates who performed better. *See Wechsler v. RD Management Corp.*, 861 F.Supp. 1153, 1160 (E.D.N.Y.1994) ("[i]n the context of an allegation of a discriminatory refusal to hire, an unsuccessful performance at a job interview, wherein the applicant fails to convince the prospective employer that he or she is capable of handling the responsibilities of the job, is a legitimate, non-discriminatory reason...," and granting summary judgment because plaintiff failed to establish that such a reason was pretextual).

■ Plaintiff suggests that his qualifications were such that he could not have been rejected on that basis and, therefore, the rejection must have been age-related. But, the discrepancy in qualifications is not as great as plaintiff suggests. As the Second Circuit more recently noted, "[w]hen a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer ... the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff...." *Byrnie v.*

*Town of Cromwell*, 243 F.3d 93, 103 (2d Cir.2001) (citation omitted).

A review of the successful applicants' credentials reveals that there is no objectively unreasonable disparity between their candidacy and that of Richane. However, even taking all inferences in his favor, and assuming he was better qualified, I cannot say as an objective matter that the disparity rises to such a level that it gives rise to an inference of pretext. *See Byrnie*, 243 F.3d at 102–07; *Denney v. City of Albany*, 247 F.3d 1172, 1178 (11th Cir.2001) ("[o]ur precedent, however, requires a strong showing of a disparity in qualifications in order for an inference of discrimination to arise").

Having thoroughly reviewed the record before me in a light most favorable to the plaintiff, I find no evidence to suggest that Fairport's stated non-discriminatory reasons for its decision not to hire Richane were false, and plaintiff's mere speculations are insufficient to establish pretext. *See Schnabel*, 232 F.3d at 88, n. 2 (2d Cir.2000) (quoting *Reeves*, 530 U.S. at 143, 120 S.Ct. at 2106) ("while McDonnell Douglas provides a useful analytical framework, ... 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff'"); *see also Ellenbogen v. Projection Video Services, Inc.*, 99–CV–11046, 2001 WL 736774 (S.D.N.Y. June 29, 2001) (promotion case). I, therefore, conclude that summary judgment is appropriate.

The recent United States Supreme Court case of *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), does not require a different result. In *Reeves*, the Supreme Court held that:

Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Id.*, 530 U.S. at 148–149, 120 S.Ct. at 2109.

It is now settled in the Second Circuit that "after *Reeves*, a court may, in appropriate circumstances, still grant a defendant's motion for summary judgment ... on an ADEA claim when a plaintiff has offered only a *prima facie* case along with evidence that the defendant's stated non-discriminatory reasons for an adverse employment action are pretextual." *Schnabel*, 232 F.3d 83 (affirming district court decision granting employer summary judgment in ADEA case). Such a determination requires "a case-by-case approach, with a court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Schnabel*, 232 F.3d at 90 (quoting *Reeves*, 120 S.Ct. at 2106); *see also Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 380 (2d Cir.2001) ("[t]he task ... is to examine the entire record and, in accordance with *Reeves*, make the case-specific assessment as to whether a finding of discrimination may reasonably be made"). In other words, an employer that has put forth a nondiscriminatory reason for its employment action is entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir.2000).

Calling *Reeves* its "principal guide on these questions," the Second Circuit has observed that "[o]ur circuit has not read *Reeves* [as] favorably to Title VII plain-

tiffs" as some other Courts of Appeals. *Zimmermann,* 251 F.3d at 380. The same analysis applies in the context of ADEA claims. The Court of Appeals has ruled "in several cases that a record that included evidence of a *prima facie* case and evidence permitting a finding of pretext did not suffice to permit a finding of discrimination." *Id.* (citing *Slattery v. Swiss Reinsurance America Corp.,* 248 F.3d 87, 93–94 (2d Cir.2001); *James v. New York Racing Ass'n,* 233 F.3d at 157; *Schnabel,* 232 F.3d at 91).

Guided by this precedent, I find that plaintiff has not demonstrated that the asserted pretextual reasons were intended to mask age discrimination. In fact, beyond the minimal proof required to state a *prima facie* case, Richane has offered no evidence that he was discriminated against because of his age.

I note that of the six finalists interviewed by Keller–Cogan, only plaintiff and Newman were old enough to be within the ADEA's protected classification. It is by no means statistically significant that those two individuals failed to procure one of the available positions from such a small field. I further note that Keller–Cogan is the only individual against whom plaintiff directs his allegations of discrimination, and Keller–Cogan herself was over 40 when she made her recommendations. Indeed, both she and Newman were 41 at the time. Moreover, the fact that Fairport has so many employees who are over 40, to some extent undermines plaintiff's argument that Fairport discriminates based upon age. *See Proud v. Stone,* 945 F.2d 796, 798 (4th Cir.1991) (employer who knowingly hires workers within a protected group is simply not a credible target for pretextual firing).

I also note that plaintiff's case is far weaker than the one the Court faced in *Reeves.* Plaintiff has admitted that he was not subjected to any age-related comments or criticisms by anyone at Fairport. Reeves, by contrast, was told by his supervisor that "he was so old [he] must have come over on the Mayflower" and that he "was too damn old to do [his] job." *Reeves,* 530 U.S. at 151, 120 S.Ct. at 2110.

For all of the reasons stated in this decision, I find that plaintiff has presented no evidence upon which a reasonable trier of fact could base the conclusion that age was a determinative factor in Fairport's decision not to hire him. *See Alban–Davies v. Credit Lyonnais Securities, Inc.,* 00–CV–6150, 2001 WL 884113 (S.D.N.Y. Aug. 8, 2001). Therefore, he cannot meet what the *Reeves* Court reaffirmed was his "ultimate burden." *Reeves,* 530 U.S. at 143, 120 S.Ct. at 2106 (internal quotation marks omitted). Summary judgment in defendant's favor is warranted.

## C. The Pattern and Practice Claim

In his complaint, plaintiff suggests that Fairport engaged in a pattern and practice of discrimination. Plaintiff has done little else though to advance such a claim. In fact, plaintiff does not even allude to it in his memorandum of law in opposition to Fairport's summary judgment motion, and he presented virtually no argument on this point at oral argument.

In any event, if plaintiff intends to defeat Fairport's motion for summary judgment based on evidence of a pattern of discrimination, he has failed to produce sufficient, admissible, relevant evidence to do so.[6] The record is such that

---

**6.** Such a claim is also barred by plaintiff's failure to raise it in his administrative charge. *See Ong v. Cleland,* 642 F.2d 316, 318 (9th Cir.1981) (plaintiff's administrative charge of discrimination in promotion did not encompass later judicial complaint of constructive

no reasonable juror could find that such a pattern existed as to Fairport. "[T]o make out a pattern or practice case, a plaintiff must show systematic disparate treatment—that is, that intentional ... discrimination is the standard operating procedure of the defendant, not merely that there have been isolated, sporadic acts of disparate treatment." *Lopez v. Metropolitan Life Ins. Co.*, 930 F.2d 157, 160 (2d Cir.), *cert. denied*, 502 U.S. 880, 112 S.Ct. 228, 116 L.Ed.2d 185 (1991); *see International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Given the need to prove such pervasive, systematic discrimination, the standard of proof for a pattern or practice claim is higher than for a generic disparate treatment claim. Isolated instances of discrimination will not suffice. *See, e.g., Teamsters*, 431 U.S. at 336, 97 S.Ct. 1843; *Ste. Marie v. Eastern Railroad Assoc.*, 650 F.2d 395, 405–406 (2d Cir.1981). Even if a *Teamsters* analysis could ever be appropriate for individual cases (this case has not been certified as a class action), the evidence adduced in opposition to Fairport's motion does not present a genuine issue concerning whether Fairport ever engaged in a pattern or practice of discrimination.

In sum, to the extent that plaintiff attempted to raise a pattern or practice theory against Fairport, all such claims must be dismissed.

---

discharge, in part because her administrative complaint did not allege that defendant had engaged in pattern or practice of discrimination against plaintiff); *Anyaibe v. Gilbert Security Serv., Inc.*, 94–CV–2377, 1995 WL 322452 *5 (D.D.C. May 18, 1995) ("plaintiff's pattern and practice claim could not reasonably be expected to arise out of the allegations in the EEOC charge or affidavit," which only "related to personal discrimination against him ...," and pattern and practice charge was

## CONCLUSION

For all of the foregoing reasons, defendant's motion for summary judgment (Dkt.# 8) is granted. Defendant's motion to strike (Dkt.# 21) is denied as moot. The complaint is dismissed with prejudice.

IT IS SO ORDERED.

---

therefore barred); *Gilliard v. New York Pub. Library Sys.*, 597 F.Supp. 1069, 1079 (S.D.N.Y.1984) (allegations as to general pattern of discrimination by defendant fell outside scope of plaintiff's EEOC charge, which only alleged discrimination against plaintiff, and pattern claim was therefore dismissed). Even if such a claim were not barred, I would grant defendant's motion for summary judgment for the reasons already stated.